Alexander T. ARTHURS, Plaintiff, Appellee,

v.

Chris O. STERN et al., Defendants, Appellants.

No. 77–1122.

United States Court of Appeals, First Circuit.

Argued June 6, 1977.

Decided Aug. 16, 1977.

As Amended on Denial of Rehearing Sept. 23, 1977.

S. Stephen Rosenfeld, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Steven A. Rusconi and Garrick F. Cole, Asst. Attys. Gen., Boston, Mass., were on brief, for defendants, appellants.

David Berman, Medford, Massachusetts, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, CAFFREY,* District Judge.

* Of the District of Massachusetts, sitting by designation.

COFFIN, Chief Judge.

The plaintiff-appellee is a physician accused of writing illegal prescriptions. As a result of the charges, disciplinary proceedings were begun before the Board of Registration and Discipline in Medicine of the Commonwealth of Massachusetts. A criminal investigation was also begun, and indictments were handed down. When the disciplinary hearing began, the plaintiff requested that proceedings be continued until after disposition of the criminal charges. The hearing officer refused, pointing to a state statute (§ 63) that forbids continuances of that sort.[1]

The plaintiff then brought this suit in federal district court. He pointed out that the disciplinary board would draw an adverse inference from his silence if he invoked his privilege against self-incrimination at the hearing. The threat of losing his license, he argued, would force him to testify, thus revealing his criminal defenses and making statements that might be used against him in the criminal trial. The district court, relying on the Fifth Amendment's privilege against self-incrimination and general notions of due process, enjoined the disciplinary board from using § 63 as a reason for refusing the plaintiff a continuance. The present appeal followed. After the appeal, but before this opinion issued, one set of criminal charges went to trial. Plaintiff testified at his trial and was acquitted. Other charges are pending, and the board has not attempted to go forward with its proceedings.

This case can be resolved on the merits[2] by reference to settled law. The board is not constitutionally forbidden from drawing an adverse inference if a doctor refuses to testify at a disciplinary hearing. The board is not conducting a criminal trial, and civil proceedings are governed by a different set of Fifth Amendment principles. In civil cases, the state may not force incriminating testimony from a citizen by threatening penalties or automatic unfavorable judgments. *See, e. g., Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). But this principle does not control when the only consequence of silence is the danger that the trier of fact will treat silence as evidence of guilt.[3] The distinction is drawn in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), which held that a prison disciplinary board may give weight to an accused inmate's silence when he stands mute for fear of a related criminal prosecution. The *Baxter* Court stated the principle broadly: the Fifth Amendment does not bar an adverse inference "where the privilege is claimed by a *party to a civil cause.*" *Id.* at 318, 96 S.Ct. at 1558. We think it applies as forcefully in medical discipline cases as it does in prison discipline cases. The appellee's assertion that doctors have a stronger liberty and property interest in continuing their practice than prisoners have in avoiding discipline is not very persuasive. Moreover, while such distinctions may have a place in a procedural or substantive due process case, they are not relevant to Fifth Amendment analysis. *Cf. Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Nor is there anything inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help the criminal prosecutors, and keeping silent,

---

1. "Said boards shall not defer action upon any charge before them until the conviction of the person accused . . .." Mass.Gen. Laws, ch. 112, § 63.

2. On appeal, for the first time, the board urges several other grounds for reversal. We are reluctant to consider them at this late date. Because we reverse on the merits, we need not decide whether these belated arguments were properly before us.

3. The Commonwealth has stated in its brief (p. 42) that "The Board's ultimate decision could not be based solely upon an adverse inference drawn from [the doctor's] presumed refusal to testify . . . [S]uch a determination would lack substantial evidence and be subject to sure invalidation upon judicial review."

a course that may lead to the loss of his license. The doctor's due process argument rests in part on the claim that the threat of an adverse inference unfairly forces him to reveal his criminal defense in advance of trial. He has some case support for his proposition. *Silver v. McCamey*, 95 U.S. App.D.C. 318, 221 F.2d 873 (1955).[4] To the extent that this argument rests on the broad ground that parties with something to lose in a proceeding may never be forced to make this choice, it is answered by *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). In *Kordel*, the FDA began an in rem action against two products sold, by a corporation whose officers were in serious danger of criminal prosecutions related to the products. The officers argued that it violated due process to hold the civil proceeding, with its attendant discovery, before the criminal trial. This the Court emphatically and unanimously denied:

> "The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as FDA invariably to choose either to forego recommendation of a criminal prosecution once

it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *Id.* at 11,[5] 90 S.Ct. at 769.

The defendants in *Kordel* raised one hypothetical that disturbed the Court. Suppose, they argued, no officer could answer the civil interrogatories without incriminating himself. The Court responded that "[f]or present purposes we may assume that in such a case the appropriate remedy would be a protective order under Rule 30(b), postponing civil discovery until after termination of the criminal action." *Id.* at 9, 90 S.Ct. at 768.

The doctor seizes on this cautiously tentative language, arguing that the Fifth Amendment may require the board to stay its proceedings until the criminal action ends. We disagree. Whatever suggestion that such an order is compelled might be read into this dictum would seem to be negated by the later decision in *Baxter v. Palmigiano, supra.* Indeed, the discussion in *Kordel* regarding protective orders is limited to the unique context in which corporate officers might be prevented from exercising their Fifth Amendment privilege because to do so would unacceptably extend the constitutional protection to the corporation which employed them. This is totally inapposite to the case before us. The remainder of the *Kordel* opinion is simply a recognition of the power of federal courts, after a balancing of interests in the particular case before them, to stay civil suits because of pending criminal charges. *See, e. g., Gordon v. FDIC*, 138 U.S.App.D.C. 308, 427 F.2d 578 (1968). The denial is

---

4. A related argument is that the threat of subsequent criminal proceedings unfairly forces him to remain silent and thus constitutes an unconstitutional restriction on the evidence the board accepts. *Cf. Bowman Trans., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 288 n. 4, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). We see no merit in this claim. *See generally Flint v. Mullin*, 499 F.2d 100 (1st Cir. 1974). The cases on which appellee apparently relies on are inapposite; they deal with the limits of judicial notice and rest on notions of unfair surprise. *See, e. g., Ohio Bell Telephone Co. v. Public Utilities Comm'n*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

5. The *Kordel* Court found no particular facts requiring a different result in that case. Nor do we find such facts here. The disciplinary proceeding was not brought solely to obtain evidence for the criminal prosecution; the doctor was aware during the hearing of the pending criminal actions; the doctor had counsel; and the doctor does not claim a danger of adverse publicity or any other special circumstances. *See Kordel, supra*, 397 U.S. at 11–12, 90 S.Ct. 763.

reviewed simply for abuse of discretion. *See Iannelli v. Long,* 487 F.2d 317 (3d Cir. 1973); *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204 (8th Cir. 1973). Given the strong public interest in promptly disciplining errant physicians taken as a class, we see no reason to hold that the board was or could be constitutionally required to stay its proceedings until the criminal prosecutions against any particular doctor were over[6]. *De Vita v. Sills,* 422 F.2d 1172 (3d Cir. 1970); *United States v. Sloan,* 388 F.Supp. 1062 (S.D.N.Y.1975); *Keene v. Rodgers,* 316 F.Supp. 217, 221 n. 4 (D.Me. 1970).

*Reversed.*

---

**6.** The district court took the view that § 63 impermissibly restricted the board's discretion to grant a continuance. We have concluded that the constitution does not require a stay in this case; we need not ask whether § 63 can be constitutionally applied in all cases. The stat-

ute is constitutional as applied, and we see no reason to create a variant of "overbreadth" analysis for cases of this sort.