William H. RACHELS, Jr.,
Plaintiff-Appellee,

v.·

Peggy Weldon STEELE,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section at Jackson.

Aug. 20, 1981.

Permission to Appeal Denied by Supreme Court Nov. 30, 1981.

Michael A. Robinson and G. Coble Caperton of the firm of Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, for defendant-appellant.

Jere Fones of the firm of Boone, Wellford, Clark, Langschmidt & Apperson, Memphis, for plaintiff-appellee.

TOMLIN, Judge.

This is an appeal from an order denying the stay of proceedings and granting a motion for summary judgment in favor of the plaintiff-appellee. The plaintiff commenced an action in the Circuit Court of Shelby County to collect a debt from the defendant. The complaint charged that the defendant was indebted to plaintiff for fraudulently misappropriating funds belonging to plaintiff. The complaint further stated as fact that subsequent to the misappropriation, defendant filed a voluntary petition in bankruptcy, and that in those proceedings a consent order had been entered, adjudicating the defendant's indebtedness to plaintiff, declaring further that the debt was not dischargeable in bankruptcy.

Defendant filed a motion to stay the proceedings in this cause, based on her Fifth Amendment privilege, alleging that she was also the target of a criminal investigation being conducted by the Internal Revenue Service. The motion to stay was denied. Plaintiff's motion for summary judgment, based upon a certified copy of the record in the Bankruptcy Court, was granted by the trial court. In this appeal, defendant presents two issues to this Court: (1) Did the trial court abuse its discretion in denying defendant's motion for a stay of proceedings; and (2) did the trial court err in granting plaintiff's motion for summary judgment? We hold that the trial court was correct in both instances.

The essential facts are these: The defendant filed a voluntary petition in bankruptcy in November, 1977, in the United States District Court for the Western District of Tennessee, Western Division, in Memphis. In her sworn petition, an indebtedness to the plaintiff was listed among her liabilities. The plaintiff filed his proof of claim, and in addition, filed a complaint in the Bankruptcy Court, seeking a determination of the dischargeability of the debt of defendant under the Bankruptcy Act. The complaint in the bankruptcy proceeding, a certified copy of which was filed in this cause, alleged that while an employee of the plaintiff, and in a fiduciary position in regard to the management of plaintiff's personal funds, the defendant created the debt by appropriating funds of the plaintiff to her own use.

A consent order was entered by the Bankruptcy Judge, approved by attorneys for plaintiff and the bankrupt (defendant here), which reads in part as follows:

In (sic) appearing to the court through the announcement of the attorneys of record for the parties that the indebtedness of the defendant, Peggy S. Weldon, to the plaintiff, William H. Rachels, Jr., is nondischargeable by reason of Section 17 of the Bankruptcy Act and that the plaintiff should be allowed his claim in full of $49,639.20.

The judge decreed that the debt of the plaintiff should be allowed in full, for the reason that it is a non-dischargeable debt of the bankrupt, in accordance with § 17(c) of the Bankruptcy Act.

On the basis of these proceedings, the plaintiff filed suit in the Circuit Court of Shelby County, seeking judgment against the defendant for $49,639.20. Defendant's answer denied the existence of the debt but admitted the existence and validity of the proceedings in the Bankruptcy Court. The plaintiff then filed a motion for summary judgment, based on certified copies of the record in the bankruptcy proceedings. Before a hearing was held on the plaintiff's motion for summary judgment, the plaintiff filed a motion for default judgment. These two pending motions by plaintiff apparently prompted defendant to file a motion seeking to have all proceedings in this civil action stayed "pending further orders of the court."

In support of the motion to stay, the defendant asserted that:

...she is presently a target of a criminal investigation being conducted by the Criminal Investigation Division of the Internal Revenue Service which involves the subject matter of the litigation presently pending before this Court. To require this Defendant to respond to a motion for a summary judgment or to otherwise answer or plead to the complaint filed in this cause would interfere with this Defendant's exercise of her Fifth Amendment privileges afforded by the Constitution of the United States of America.

It appears that no evidentiary hearing on this motion was held. The trial court denied plaintiff's motion for summary judgment and defendant's motion for a stay, as well.

The case came on to trial. Plaintiff renewed his motion for summary judgment, based upon defendant's record in the bankruptcy proceeding. The trial court granted plaintiff's motion, entering judgment in the amount of $56,981.52, being the amount stipulated by the parties as damages.

## I. THE FAILURE TO STAY THE PROCEEDINGS

■ The first issue is whether or not the trial court erred in denying defendant's motion to stay all proceedings. Defendant's request for a stay was based on her claim of Fifth Amendment privilege. Defendant concedes that the disposition of a motion to stay a proceeding is clearly a matter of discretion with the trial court, and on appeal defendant has the burden to show that the court abused its discretion. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 163 (1936). The action of the trial court will not be disturbed on appeal unless it is clear from the record that there was an abuse of discretion. 1 Am.Jur.2d Actions, § 97 (1962).

■ The principal thrust of defendant's argument on this issue is to the effect that defendant was faced with both a criminal proceeding and a civil action at the same time; thus the choice given her was either to forfeit her defense to plaintiff's civil action and thus give up her property without a fight, or to testify in defense of plaintiff's action and thereby provide for the government some type of discovery which otherwise would not be normally obtainable in a federal criminal action. In other words, defendant takes the position that without a stay of this action she was facing compulsory self-incrimination.

In our opinion, the cases do not support her contention. Defendant relies heavily upon the case of *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). In *Kordel*, there was an action in rem against two products sold by a corporation whose officers were in serious danger of criminal prosecutions relating to these products. The officers argued that it violated due process to hold the civil proceeding along with its intendent discovery before the criminal trial occurred. The Supreme Court unanimously decided against this contention. Insofar as protective orders are concerned, *Kordel* is limited to the situation where corporate officers might be prevented from exercising their Fifth Amendment privileges because to do so would extend the constitutional protection to the corporation which employed them, which would be unacceptable.

In the opinion of this Court, more in point are the cases of *Arthurs v. Stern*, 560 F.2d 477 (1st Cir. 1977); and *U. S. v. White*, 589 F.2d 1283 (5th Cir. 1979). In *Arthurs*, a physician was accused of writing illegal prescriptions. Disciplinary proceedings were begun before the Board of Registration and Discipline, and at the same time a criminal investigation was also begun, resulting in indictments being handed down. The plaintiff requested that the disciplinary hearing be continued until after the disposition of the criminal charges, which request was refused. The plaintiff then brought a suit in the U. S. District Court, pointing out that the disciplinary board would infer from his silence that he was guilty, if he invoked his privilege against self-incrimination at the hearing. On the other hand, he argued that the threat of losing his license would force him to testify; thus revealing information

that might be used against him in the criminal trial. Citing his Fifth Amendment privileges against self-incrimination, the district court enjoined the disciplinary board from refusing the doctor a continuance.

On appeal, the First Circuit Court of Appeals found that it was not constitutionally impermissible in a civil case for the trial court to draw an adverse inference if one refuses to testify. Citing the case of *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the court in *Arthurs* stated:

The *Baxter* court stated the principle broadly; The Fifth Amendment does not bar an adverse inference "where the privilege is claimed by a *party to a civil cause.*" 560 F.2d at 478. (emphasis added)

In reversing the district court, the court stated:

Nor is there anything inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license. *Id.* at 478–479.

In the case of *U. S. v. White*, supra, this principle is approached from a different viewpoint. An aluminum siding company sued several former employees for defrauding the company. This scheme to defraud became the focus of a federal grand jury investigation, indictments were returned, and after a jury trial, two defendants were convicted. On appeal, the defendant Keno contended that being forced to trial in the civil matter, while there were criminal charges arising out of the same conduct pending against him, forced him to choose between losing the civil suit or preserving his Fifth Amendment privilege. In rejecting this argument, the court said:

He was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most effective defense by remaining silent, there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment. 589 F.2d at 1286.

In *White*, we are given a clear explanation of the manner of exercise of the privilege herein involved. At page 1287, the court states:

Once it is recognized that Keno was not compelled to testify, it becomes clear that his decision to do so was a product of trial strategy. Any "waiver" of the fifth amendment must be voluntary, but invocation of the privilege does not release defendant from any choice concerning the use of his or her testimony. The fifth amendment preserves the right to choose, and the voluntariness of the choice is always affected in some way by the exigencies of a particular situation. The voluntariness inquiry necessarily incorporates an understanding that defendant cannot be free from conflicting concerns, and in any case, defendant must weight the relative advantages of silence and explanation. In the present case, the state court did not so unduly burden the employment of silence as to make the decision to testify involuntary.

In our opinion, the trial court's denial of defendant's motion to stay was in no way an abuse of discretion.

## II. GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION

The second issue challenges the action of the trial court in granting plaintiff's motion for summary judgment. We have examined the pleadings as they existed at the time the motion was disposed of. The plaintiff's motion seeks summary judgment in his favor based on the record in the bankruptcy proceeding. An examination of the certified record reveals (1) that the defendant filed a sworn petition in bankruptcy; (2) that she listed as a valid outstanding debt to plaintiff a promissory note in the amount of $35,000.00; (3) that plaintiff filed a complaint in the bankruptcy proceeding, claiming the amount of the debt to be $49,639.20, alleging that the debt was non-dischargeable under the provisions of

§ 17 of the Bankruptcy Act, charging that the debt was created by breach of trust on the part of the defendant; and (4) that a *consent order* (emphasis supplied) was entered by the Bankruptcy Judge, approved by attorneys for the plaintiff and the defendant, declaring that the defendant was indebted to the plaintiff, that the debt was nondischargeable by reason of § 17 of the Bankruptcy Act, and that the debt amounted to $49,639.20.

In our opinion, the consent decree in bankruptcy concluded the issue of liability between the parties. In *Third National Bank v. Scribner*, 212 Tenn. 400, 370 S.W.2d 482, 486 (1963) our Supreme Court stated:

> A consent decree is so binding as to be absolutely conclusive upon the consenting parties.
>
> \* \* \* \* \* \*
>
> A judgment by consent is in substance a contract of record made by the parties and approved by the court. . . .

Furthermore, this appears to us to be an appropriate occasion for the application of judicial estoppel, which can be invoked by the court at any time, without it having to be pleaded. See *Gilley v. Jernigan*, 597 S.W.2d 313 (Tenn.App.1979), *cert. denied*. At the hearing on the motion for summary judgment, the parties, through their counsel, agreed on the exact amount of damages. On this record there is no genuine issue as to any material fact. The plaintiff is entitled to summary judgment as a matter of law. We find no error on the part of the trial court.

The judgment of the trial court is affirmed. All costs on appeal are assessed against the defendant.

MATHERNE, J., and McLEMORE, Special Judge; concur.