**DIGITAL EQUIPMENT CORPORATION,**
Plaintiff,

v.

**CURRIE ENTERPRISES,**
et al., Defendants.

**Civ. A. No. 91–11624–WD.**

United States District Court,
D. Massachusetts.

Nov. 4, 1991.

Thomas S. Chase, Jeremiah T. O'Sullivan, Andrew C. Griesinger, Choate, Hall & Stewart, Boston, Mass. (James P. Shaughnessy, Digital Equipment Corp., Maynard, Mass., of counsel), for Digital Equipment Corp.

J. William Codinha, P.C., Sigmund J. Roos, Beth A. O'Neill, Peabody & Brown, Boston, Mass., for Warren K. Haeberle.

Nancy Gertner, Dwyer, Collora & Gertner, Boston, Mass., for Dennis Palmisciano.

Regina L. Quinlan, Boston, Mass., for Currie Enterprises.

Joseph J. Balliro, Boston, Mass., for Philip Mario Carnovale.

James B. Krasnoo, Boston, Mass., for John Trebendis.

Norman S. Zalkind, Robert L. Sheketoff, David Duncan, Zalkind, Sheketoff, Wilson Homan Rodriguez & Lunt, Boston, Mass., for Paul A. Cooperstein.

Michael R. Taylor, Gregory J. Angelini, Leominster, Mass., Bradford Blakeley, Wayland, Mass., for Joseph V. McGee.

William P. Homans, Homans, Hamilton & Dahman, Boston, Mass., for Fred Kleinerman.

ORDER RE: MOTION TO QUASH *SUB-POENA DUCES TECUM* OR IN THE ALTERNATIVE TO STAY DISCOVERY (DOCKET ENTRY # 63); DEFENDANT PALMISCIANO'S MOTION FOR A STAY OF PROCEEDING (DOCKET ENTRY # 70); DEFENDANT BLAKELEY'S MOTION FOR A STAY OF PROCEEDING (DOCKET ENTRY # 87); MOTION OF DEFENDANT FRED P. KLEINERMAN FOR STAY OF FURTHER PROCEEDINGS (DOCKET ENTRY # 92); and DEFENDANT PHILIP M. CARNOVALE'S MOTION FOR STAY OF PROCEEDING (DOCKET ENTRY # 127)

BOWLER, United States Magistrate Judge.

Defendants Dennis Palmisciano, Fred P. Kleinerman, Bradford Blakeley and Philip M. Carnovale (hereinafter "defendants") each seek a stay of this civil litigation because of a related ongoing criminal action. (Docket Entries ## 70, 92, 87 & 127). On July 16, 1991, the above four defendants were indicted, together with twelve other defendants, in *United States v. Carnovale, et al.*, Criminal Number 91–10206–WF. (Docket Entry # 72). Non-party Paul A. Cooperstein ("Cooperstein"), named in a second indictment[1], also filed a motion to quash the subpoena *duces tecum;* served

on the keeper of records of the Law Offices of Paul A. Cooperstein, P.C., in connection with a deposition noticed for August 1, 1991. (Docket Entry # 63). All of the defendants, as well as Cooperstein, claim, in part, that continuing the discovery in this action jeopardizes their fifth amendment right against self-incrimination.

On September 23, 1991, this court held a hearing on the above motions[2] and took the matter under advisement. (Docket Entry # 141).

## BACKGROUND

### A. The Civil Case

On June 13, 1991, plaintiff Digital Equipment Corporation filed a fifty-three page complaint against twenty defendants[3] for damages resulting from an alleged conspiracy to obtain fraudulently and sell the plaintiff's computer components and peripheral equipment from 1984 to 1990. In the complaint, the plaintiff charges the defendants with violations of civil RICO,[4] federal and state unfair competition laws, Mass.Gen.L. ch. 110B and ch. 93A, and The Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). The plaintiff also seeks recovery for: conspiracy; fraud; breach of contract; conversion; unjust enrichment; breach of fiduciary duties; tortious interferences

---

1. Also on July 16, 1991, a federal grand jury handed down a second indictment, Criminal No. 91–10204–WF, charging defendant Cooperstein and two other defendants with using false information to obtain a loan to buy property owned by Carlyle–Omni Industries, Inc., a defendant in the first indictment. (Docket Entry # 63, ex.B).

2. At the hearing, this court allowed defendant Carnovale leave to file his motion to stay.

3. Named defendants are as follows: Currie Enterprises, Inc. ("Currie Enterprises"); Raymond B. Currie, owner, officer and director of Currie Enterprises; Mary J. Currie, defendant Raymond Currie's wife; Gregory S. Currie and R. Paul Currie, defendant Raymond Currie's sons; Carlyle–Omni Industries, Inc. ("Carlyle–Omni"); Carlyle–Omni Realty Investors, Inc. ("Carlyle–Omni Realty"); Edward F. Desmond, Jr., former employee of Currie Enterprises and officer and director of Carlyle–Omni Realty; Fred P. Kleinerman, former employee or agent of de-

fendants Desmond or Carlyle–Omni; James M. Terrasi and Stephen P. Beyers, employees, agents or associates of defendants Desmond or Carlyle Omni; Warren K. Haeberle, a former vice president of Electronic Service Specialists, Ltd. ("ESS"); Evan Padilla, former secretary and director of The Moore Group, Inc. ("The Moore Group"); John J. Trebendis, former manager of Digital's property disposal centers in Acton and Northboro, Ma.; Joseph V. McGee, former supervisor of Digital's property disposal centers in Acton and Northboro, Ma. and Contoocook, N.H.; Louis Buckman, former security guard at Digital's storage facility in Athol, Ma.; Windham Recovery Systems, Inc. ("Windham"); Bradford W. Blakeley, director of Windham; Philip M. Carnovale, president, treasurer and clerk of Windham and Dennis M. Palmisciano, director and former clerk of Windham (Docket Entry # 1).

4. RICO is an acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et. seq.*

with contractual relations and with advantageous business relations; and fraudulent concealment. The plaintiff's allegations, which span a six-year time period, are both broad and complex.

According to the complaint, defendant Palmisciano's role stems from his serving as an officer and director of defendant Windham Recovery Systems, Inc. ("Windham"), a corporation formed on or about September 12, 1988, to reclaim precious metals. Through their roles as Windham officials, defendants Palmisciano, Blakeley and Carnovale allegedly conspired to obtain fraudulently and convert the plaintiff's computers and equipment. (Docket Entry #1, ¶¶ 52–59). The plaintiff further alleges that defendants Carnovale and Blakeley used Windham to distribute stolen computer parts obtained from an intermediary. (Docket Entry #1, ¶ 59(b)). Defendants Palmisciano and Carnovale purportedly stole the plaintiff's computer equipment from a Digital storage facility to which they gained access by bribing a Digital employee. (Docket Entry #1, ¶ 59(c)).

Defendant Kleinerman's role spans a longer time period. According to the complaint, from 1987 to 1989, defendant Kleinerman was an "employee or agent" of defendants Edward F. Desmond ("Desmond") and Carlyle–Omni Industries, Inc. ("Carlye–Omni"). With defendant Kleinerman's assistance, Desmond and Carlyle–Omni illegally obtained and sold the plaintiff's proprietary material. (Docket Entry #1, ¶ 15 & 37–41). From 1988 through 1990, defendant Kleinerman, operating under the names of "KBG," "BFL, °International" and "ISS," obtained stolen computer equipment from Windham and resold it to others, including defendant Warren K. Haeberle. (Docket Entry #1, ¶¶ 15 & 58).

## B. The Criminal Case

On July 16, 1991, a grand jury indicted the defendants on criminal RICO and RICO conspiracy charges, 18 U.S.C. § 1962(c) and (d), and on charges of interstate transportation of stolen goods, 18 U.S.C. §§ 2314 and 2.[5] The charges against defendants Palmisciano, Blakeley and Carnovale stem from their involvement with the "Windham Group" while the charges against defendant Kleinerman stem from his involvement with the "KBG Group." (Docket Entry #72, Indictment, pp. 53–56 & 60–65). The criminal case covers a time period from 1988 to 1990. Similar to the civil case, the criminal case involves the theft and distribution of the plaintiff's computer component parts and equipment.

## DISCUSSION

"It is not inherently unconstitutional ... to proceed with parallel civil and criminal proceedings." *Mainelli v. United States,* 611 F.Supp. 606, 615 (D.C.R.I.1985) (citing *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)[6]); *accord Arthurs v. Stern,* 560 F.2d 477, 479–80 (1st Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). This court, however, has the "inherent *discretionary* authority to stay cases" to manage its docket in the interest of justice and efficiency. *Arden Way Assoc. v. Boesky,* 660 F.Supp. 1494, 1496 (S.D.N.Y.1987) (emphasis added); *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163,

---

**5.** Unlike defendants Blakeley, Carnovale and Kleinerman who are charged with multiple racketeering acts and violations of other statutes, defendant Palmisciano is charged with one count of racketeering (violation of 18 U.S.C. § 1962(c)), one count of racketeering conspiracy (violation of 18 U.S.C. § 1962(d)), and two counts of interstate transportation of stolen goods (violation of 18 U.S.C. § 2314). (Docket Entry #71).

**6.** The Supreme Court, in *Kordel,* a seminal case, allowed a prosecutor's use of evidence obtained from civil interrogatories in a related criminal case. Similar to the *Kordel* defendants, the defendants seeking a stay in this case are represented by counsel and there is little, if any, showing that the plaintiff is coercing civil discovery to obtain an advantage for the prosecution in the criminal case. Furthermore, this court does not place a great deal of weight on the affidavit of Paul A. Cooperstein (Docket Entry #64) filed in support of his motion to quash or stay (Docket Entry #63), wherein Attorney Cooperstein states that newspaper reports indicate "that Digital has been cooperating with the office of the United States Attorney in the criminal investigation.... (Docket Entry #64).

165–66, 81 L.Ed. 153 (1963); *Standard Sanitary Manufacturing Company v. United States,* 226 U.S. 20, 52, 33 S.Ct. 9, 16, 57 L.Ed. 107 (1912) (trial court has discretion under Sherman Act to determine whether to stay civil action pending outcome of criminal trial).

Alternatively, this court may, in lieu of a general stay, impose protective orders, seal interrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter. *Securities & Exchange Commission v. Dresser Industries,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) (court may impose protective orders or postpone civil discovery in the interests of justice); [7] *cf. United States v. Parcels of Land,* 903 F.2d 36, 44 (1st Cir.1990) (protective order prohibiting use of forfeiture claimant's deposition transcripts and interrogatories except for perjury and impeachment).

The decision of whether to stay a civil case because of a pending criminal action involves a balancing of interests. *Arthurs v. Stern,* 560 F.2d at 479. The pertinent interests include:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

*Arden Way Assoc. v. Boesky,* 660 F.Supp. at 1496–97. These interests are discussed below in the context of the defendants motions to stay (Docket Entries ## 70, 87, 92 & 127).

I. *The Defendants' Motions to Stay (Docket Entries ## 70, 87, 92 & 127)*

A. The Plaintiff's Interests

The plaintiff argues that the delay resulting from a stay will substantially prejudice the plaintiff's interest in the speedy resolution of this case. Defendants emphasize their roles are minor and that a stay will not significantly prejudice or inconvenience the plaintiff in prosecuting the principal part of its case.

The plaintiff is entitled to a speedy discovery process. This is particularly true in the context of complex litigation which must proceed in an efficient manner. *Arden Way Assoc. v. Boesky,* 660 F.Supp. at 1497. Despite the defendants' "minor" roles, proceeding in a splintered manner against some defendants and not as to others prejudices the plaintiff. *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118, 1119 (S.D.N.Y.1980).[8] As argued by the plaintiff at the September 23, 1991 hearing memories become stale with the passage of time. Furthermore, the plaintiff needs to proceed forthwith with discovery in order to locate additional parties before the expiration of the statute of limitations. *See Rodriguez v. Banco Central,* 917 F.2d 664 (1st Cir.1990) (discussing statute of limitations in civil RICO case).

B. The Defendants' Interests and Burden

The foregoing interests of the plaintiff must in turn be balanced against the defendants' interests. The defendants argue in favor of imposing a stay because of the infringement of their fifth amendment

---

**7.** Distinguishing *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) (IRS not permitted to issue summons once IRS refers criminal matter to Justice Department for prosecution), the *Dresser* court allowed the Securities and Exchange Commission ("SEC") to issue subpoenas despite pending criminal charges in the same matter. 628 F.2d at 1388. *See generally White Collar Crime, Third Annual Survey of the Law,* 22 Am.Crim. L.Rev. 229, 616–618 (1984) (chapter entitled Parallel Civil and Criminal Proceedings).

**8.** The Paine Webber court summarized the predicament as follows:

> Were a stay of discovery ... granted, it would be necessary upon the vacatur of the stay, to re-notice depositions of the other defendants.... To avoid this, plaintiff would have to withhold taking the depositions of those defendants until the vacatur of a stay, an alternative which would be prejudicial to plaintiff's right to proceed expeditiously against all defendants.

rights, the inevitable conflict between civil and criminal discovery and their strained financial resources. These concerns are addressed seriatim.

### 1. *Fifth Amendment*

The defendants fear that assertion of their fifth amendment privilege will lead to an adverse inference by the finder of fact. Moreover, if they do not assert the privilege, the defendants risk having statements discovered in this case used against them in the criminal proceedings.

In a civil case, the finder of fact is not prohibited from making an adverse inference from a party's .assertion of the fifth amendment privilege. *Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976) (finder of fact may draw adverse inference at prisoner's disciplinary hearing); *Arthurs v. Stern,* 560 F.2d at 478 (fifth amendment does not bar adverse inference where privilege is claimed by party to a civil cause).

This court is however mindful of the defendants' concerns caused by the overlap of the subject matter in this case with that of the criminal case. *See Mainelli v. United States,* 611 F.Supp. 606, 615 (D.R.I.1985) (risk of prejudice is high in parallel actions regarding same subject matter); *Securities & Exchange Commission v. Dresser Industries,* 628 F.2d at 1377 ("strongest case" for stay exists where party is indicted for a serious offense and must defend a civil action involving the same matter). The risk of infringing the above defendants' fifth amendment rights is high. As indicated *infra,* however, there are less drastic methods in lieu of a stay to protect the defendants' rights. For example, this court can seal answers to interrogatories and limit disclosure to counsel. Although the plaintiff's interests may parallel those of the government in the criminal proceedings, there is no evidence, to date, of "bad faith or malicious government tactics."

*Mainelli v. United States,* 611 F.Supp. at 615 (quoting *S.E.C. v. Dresser,* 628 F.2d 1368 (D.C.Cir.1980).[9]

### 2. *Conflicts Between Civil and Criminal Discovery*

Discovery is traditionally limited in criminal cases. The defendant is generally entitled to evidence material to his defense, exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, and evidence that the government intends to use at trial. Under the Jencks Act, 18 U.S.C. § 3500, the defendant may obtain statements of government witnesses only when the government calls the witness to the stand. Rule 16(a), Fed.R.Crim.P.; LR. 116.1(a); *see generally,* Judge Pollock, *supra* footnote 11, at 208–209.

In contrast, discovery in a civil case extends to "any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Fed.R.Civ.P. 26(c). Information is relevant "if the information is reasonably calculated to lead to the discovery of admissable evidence." *Id.; see: Afro–Lecon, Inc. v. United States,* 820 F.2d 1198, 1203 (Fed.Cir.1987) and *Campbell v. Eastland,* 307 F.2d 478, 487–88 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963) (discussing contrast between civil and criminal discovery in the context of ruling on a motion to stay).

The defendants argue that discovery in this case may allow the prosecution to obtain information outside the scope of discovery in the criminal proceedings. As noted by the court in *Founding Church of Scientology, Etc. v. Kelley,* a party "should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery...." 77 F.R.D. 378, 380 (D.C.Cir.1977); *accord, United States v. Percuoco,* 109 F.R.D. 565, 567 (D.Mass. 1986) (federal policy preventing civil liti-

---

9. Senior United States District Judge Milton Pollack of the Southern District of New York, author of the *Arden Way Assoc. v. Boesky* opinion, stresses "that a general stay of all civil discovery is not by any means the best option available to the court or to the litigants." Senior United States District Judge Milton Pollack of the Southern District of New York, *Parallel Civil and Criminal Proceedings,* Transferee Judges' Conference, October 17–19, 1989, 129 F.R.D. 201, 211.

gants from circumventing criminal discovery).[10]

■ However, absent special circumstances that suggest bad faith or malicious governmental tactics, this court will not, at this juncture, stay this case because of the related criminal proceedings. *See Mainelli v. United States*, 611 F.Supp. at 614 (not inherently unconstitutional to proceed in civil case absent special circumstances suggesting bad faith or malicious government prosecution); *accord United States v. Kordel*, 397 U.S. at 11–12, 90 S.Ct. at 769–70. Conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay. *United States v. All Funds on Deposit*, 767 F.Supp. 36, 42 (E.D.N.Y.1991).

### 3. *Strained Financial Resources*

The defendants further contend that their limited financial resources are strained by defending in two forums. Although proceeding in two forums may burden the defendants' finances, *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53, 56 (E.D.Pa.1980), the strain upon the defendants' finances does not outweigh other interests that militate in favor of proceeding expeditiously. *See Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. at 1118–1119 (court rejected defendants' argument of limited financial resources).

### C. Convenience to the Court

This court finds it more convenient to proceed against all the defendants simultaneously. Discovery can progress at a faster rate and the re-notice of depositions is avoided. *See Id.* at 1119 and footnote number 8 *supra*. Although resolution of the criminal proceedings may possibly obviate contentions in this proceeding, *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 873 (3rd. Cir.1976), this court finds it unrealistic to rely upon fortuitous events to manage its docket. "[A] policy of freely

granting stays solely because a litigant is defending simultaneous multiple suits interferes" with judicial administration. *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. at 1119; *See Arden Way Assoc. v. Boesky*, 660 F.Supp. at 1497 (dicta that defendant cannot seek privileged status because of his own delinquencies and cannot use criminal charge as a shield against a civil suit).

### D. Interests of Non–Parties

Parties in the criminal proceedings not named in this complaint may, conceivably, be called as witnesses in this action and assert their privilege against self-incrimination. This court is mindful of the fifth amendment rights of these witnesses but is reluctant to stay this action at this time. This court will readdress this issue in the future in the event that a witness raises the privilege in response to specific inquiries. *Cf. General Dynamics Corp. v. Selb Manufacturing Company*, 481 F.2d 1204 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974) (privilege against self incrimination must be asserted with respect to specific question. Sanctions upheld for claimant's blanket refusal to answer interrogatories on fifth amendment grounds).

### E. The Public Interest

■ The public has an interest in both the prompt resolution of civil cases as well as the fair prosecution of criminal cases. *See United States v. Hugo Key And Son, Inc.*, 672 F.Supp. 656, 658 (D.R.I.1987) (administrative policy gives priority to public interest in law enforcement). *See also Arden Way Assoc. v. Boesky*, 660 F.Supp. at 1500 (public interest in integrity of securities market militates in favor of expeditious prosecution of civil litigation). This court, however, having balanced the equities at issue, determines that less drastic means than a stay can adequately protect

---

10. *See Securities & Exchange Commission v. Dresser Industries*, 628 F.2d at 1376 (parallel civil action may undermine criminal proceeding by expanding discovery beyond Fed.R.Crim.P. 16(b) or exposing basis of the defense to the prosecution).

the pertinent interests.[11]

Therefore, in order to maintain the balance between the parties and protect the defendants' interests and their fifth amendment rights, this court directs the parties to file a joint proposed protective order on or before November 29, 1991.[12] The defendants' motions for stay (Docket Entries ## 70, 87, 92 & 127) are therefore DENIED.[13]

## II. *Motion to Quash Subpoena Duces Tecum or in the Alternative to Stay Discovery (Docket Entry # 63)*

In his motion to quash, Cooperstein seeks to quash the plaintiff's subpoena *duces tecum* addressed to the keeper of records of the Law Offices of Paul A. Cooperstein, P.C. (Docket Entry # 63). Cooperstein, a solo practitioner in the above law offices, objects to production on the basis of: (1) attorney-client privilege; (2) work product doctrine; and (3) fifth amendment rights.

■ Cooperstein's first two grounds are not supported with adequate specificity. The burden of establishing the existence of the attorney-client privilege and the applicability of the work product doctrine rests with the party resisting discovery. *BarclaysAmerican Corporation v. Kane*, 746 F.2d 653, 656 (10th Cir.1984) (party asserting attorney-client privilege or work product doctrine as bar to discovery has burden to establish applicability). Thus,

> the party must supply the court with sufficient information from which it could reasonably conclude that the communication: (1) concerned the seeking of legal advice, (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and (4) is at the client's instance permanently protected.

*Federal Trade Comm'n v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980) (citation omitted).

■ Cooperstein fails to meet this burden. He merely states that "among the documents" requested, "if they exist," are documents protected by the attorney-client privilege and the work product doctrine. Cooperstein fails to identify the basis for his assertion of the attorney-client privilege or the work product doctrine sufficiently to permit judicial resolution. *Cf. Anderson v. Beatrice Foods Co.*, 127 F.R.D. 1, 5 (D.Mass.1989), *aff'd*, 900 F.2d 388 (1st Cir. 1990) (documents subject to subpoena must be identified). Cooperstein's motion on the basis of the attorney-client privilege and work product doctrine is therefore DENIED.

■ Cooperstein's final argument is that the act of producing the documents as

---

11. This court may seal depositions under Rule 30(d) which allows a court to "limit the scope and manner of the taking of the deposition as provided in Rule 26(c)". Subpoenas can be modified as provided under Rule 45(b), Fed. R.Civ.P. Moreover, this court may prohibit the use of depositions, interrogatories and affidavits except for the limited purposes of impeachment or perjury. *See United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir.1990); *see Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir.1979) (depositions taken under court approved stipulation available only to parties and counsel and used only in the civil litigation); *cf. United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir.1990) (protective order prohibiting use of forfeiture claimant's deposition transcripts and interrogatories except for perjury and impeachment); *see generally*, Paul K. Rooney and Joseph Diaz, *Discovery in Civil RICO Actions*, 141 Practicing Law Institute 169 (part IV(B) and cases cited therein); Judge Pollack *supra* note 9.

12. For the content of the proposed protective order, this court suggests that the parties review the authorities cited in footnote number 11. This court further suggests that the parties include the following language:

> Nothing in this Order shall constitute a waiver of other objections which either party may have to discovery requests from the other party.
> Notwithstanding any provision or implication to the contrary, no document claimed to be subject to this order may be filed with the Clerk without advance approval in writing by the court. This requirement is imposed for the protection of the interests of the parties against risks of accidental disclosure and to conserve scarce storage space and time of court personnel.

13. This court will reevaluate the situation if and when the balance of the burdens, both private and public, militates in the defendants' favor to a greater degree. *Accord, Arden Way Assoc. v. Boesky*, 660 F.Supp. at 1500.

keeper of the records of the Law Offices of Paul A. Cooperstein, P.C. is quasi-testimonial and therefore incriminating. Because Cooperstein is essentially the corporation's alter ego, Cooperstein argues that by producing potentially inculpatory documents, and therefore ratifying their existence, accuracy and location, Cooperstein is forced to incriminate himself.

The defendant's argument is unavailing. The Supreme Court, in *Braswell v. United States*, 487 U.S. 99, 100, 108 S.Ct. 2284, 2286, 101 L.Ed.2d 98 (1988), held that the custodian of corporate records may not "resist a subpoena for such records on the ground that the act of production would incriminate him in violation of the Fifth Amendment." *Braswell* culminates a long line of cases holding that a keeper of corporate records, as an agent of a separate legal entity not entitled to constitutional protection, may not assert a fifth amendment privilege when acting on the corporation's behalf.

Cooperstein argues that the *Braswell* Court left open the question of whether to apply the above holding to a corporation operated by a single employee, even though the corporate entities subject to subpoena in *Braswell* were essentially one-man operations.[14] Cooperstein is correct insofar as the Court left open the question of whether to compel production "when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitable conclude that he produced the records." *Id.* at 118, n. 11, 108 S.Ct. at 2295, n. 11.

However, the First Circuit, in *U.S. v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 394 (1st Cir.1988) foreclosed such a possibility, interpreting *Braswell* to require production, even "assuming Lawn Builders to be a one man corporation, and (defendant) to be that one man...." The law is therefore clear that Cooperstein may not assert a fifth amendment privilege

against producing the records of his professional corporation.

### CONCLUSION

In accordance with the above discussion, the following motions are DENIED: (1) defendant Palmisciano's Motion for a Stay of Further Proceedings (Docket Entry # 70); (2) Defendant Blakeley's Motion for a Stay of Proceeding (Docket Entry # 87); and (3) Motion of Defendant Fred P. Kleinerman for Stay of Further Proceedings (Docket Entry # 92); and (4) Defendant Philip Carnovale's Motion for Stay of Proceeding (Docket Entry # 127). The parties are ORDERED to file a proposed protective order on or before November 29, 1991. Cooperstein's Motion to Quash *Subpoena Duces Tecum* or in the Alternative to Stay Discovery (Docket Entry # 63) is DENIED.

---

**14.** Petitioner Randy Braswell was the sole or majority shareholder in two corporate entities through which he operated sales ventures. Though his wife and mother were corporate officers, neither "had any authority over the business affairs of either corporation." *Id.* at 101, 108 S.Ct. at 2286.