IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, January 4, 2011

IN RE: CHLOE R.P.

Appeal from the Circuit Court for Hamilton County, Division II
No. 09D1579      Hon. W. Jeffrey Hollingsworth, Judge

No. E2010-01257-COA-R3-PT - Filed February 17, 2011

In this action to terminate the parental rights of the mother, the petitioner alleged statutory grounds for termination of the mother's parental rights. The mother answered, defending her right to remain a parent. At trial, the parties stipulated that there were statutory grounds for termination of the mother's parental rights. The only issue at trial, was whether or not it was in the best interest of the child for the mother's rights to be terminated. Following the evidentiary hearing, the Trial Court found that it was in the best interest of the child to terminate the mother's parental rights by clear and convincing evidence. On appeal, we concur with the Trial Court that there was clear and convincing evidence that it was in the best interest of the child to terminate the mother's parental rights.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Rachel M. Stephens, Hixson, Tennessee, for the appellant.

Robert D. Bradshaw, Chattanooga, Tennessee, Guardian ad Litem, *pro se.*

**OPINION**

This parental termination action was brought against the mother, A.L., by the child's guardian ad litem. The guardian ad litem alleged that the child had been adjudged to be

dependent and neglected by the Juvenile Court, and that temporary custody was awarded to DCS on August 8, 2008, and that the child was found to be dependent and neglected and the victim of severe abuse. The Petition states that custody of the child was given to the biological father, C.P. who resides in Texas.

The Petition alleged, as grounds for termination, that the mother had failed to establish a suitable home for the child, and demonstrated a lack of concern for her to such a degree that it appeared unlikely she would be able to provide a suitable home at an early date. Further, that the mother had continued to reside with her husband who had murdered the child's older brother, and that the child continues to suffer from trauma and grief related to that incident. The Petition concludes that it would be in the child's best interest if the mother's parental rights were terminated.

The mother was appointed counsel to represent her, and a hearing was held on April 16, 2010. At the outset of the hearing, the Court addressed mother's motion to dismiss the Petition, which was based on the mother's argument that the Petition did not contain the language which she alleged was required by the statute regarding whether the child would be placed for adoption. The Court denied the motion to dismiss, finding that the statute contemplated that a termination petition could be filed as part of an adoption action or as a separate proceeding.

At the conclusion of the presentation of evidence, the Court ruled and reiterated that grounds of severe child abuse had been stipulated, such that the only issue before the Court was best interests. The Court stated that it was well aware of the gravity of its decision, that there were constitutional issues that were inherent in such a decision, and that there was a heightened standard of proof, i.e. clear and convincing evidence. The Court found that there was clear and convincing evidence that the mother's parental rights should be terminated.

The Court stated that it based its ruling on several factors, including the horrid conditions of the home in which the children were living with the mother, the danger presented by the stepfather, and the trauma caused to the child in witnessing what the stepfather did to her brother. The Court found there was clear and convincing evidence that the child suffered from what she saw, and that she was terrified of the stepfather. The Court found that there was clear and convincing evidence that the mother failed to protect her children and neglected them. The Court found that there was also clear and convincing evidence that the mother would continue to fail to protect the child in the future. The Court found that it was clear that the mother intended to maintain a relationship with the stepfather in the future, and that if her rights were not terminated, this could present a grave danger to the child, psychologically, emotionally, and physically.

The Court considered the factors related to best interests, and found the mother had not made any adjustment to protect the child and keep her safe, that there was no meaningful relationship between them, and that the child was thriving in Texas, and would be devastated if she were required to return to the mother. The Court determined that it was in the best interest of the child for the mother's parental rights to be terminated, and so ordered.

The mother filed a notice of appeal and has raised the following issues:

1. Whether the Trial Court should have dismissed the petition for failing to include the language required by Tenn. Code Ann. §36-1-113(d)(3)(C)?

2. Whether the Trial Court, after allowing the guardian ad litem to amend the petition to conform to the evidence, should have dismissed the petition at the close of petitioner's proof based on the absence of any evidence that the child would be adopted?

3. Whether the Trial Court abused its discretion by denying the mother's motion to continue when the mother had pending criminal charges relating to the same events alleged in the termination petition?

4. Whether the Trial Court was presented with clear and convincing evidence that termination was in the child's best interests?

The mother argues that the Trial Court erred in failing to dismiss the petition based on the fact the child was not going to be adopted. She argues that the language of Tenn. Code Ann. §36-1-113(d)(3)(C) requires that the petition states that the child will be placed with someone who can adopt the child or place the child for adoption, and that this language was not present in the Petition filed in this case, and further that no adoption was contemplated.

The statute provides:

The petition to terminate, or the adoption petition that seeks to terminate parental rights, shall state that:

(i) The petition or request for termination in the adoption petition shall have the effect of forever severing all of the rights, responsibilities, and obligations of the parent(s) or guardian(s) to the child who is the subject of the order, and of the child to those parent(s) or guardian(s);

-3-

(ii) The child will be placed in the guardianship of other person, persons or public or private agencies who, or that, as the case may be, shall have the right to adopt the child, or to place the child for adoption and to consent to the child's adoption; and

(iii) The parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have any relationship, legal or otherwise, with the child.

The Trial Court held that the statute contemplates that termination can take place whether as part of an adoption proceeding or not.

The mother relies on the case of *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), but the Court in that case rejected the mother's argument that an adoption had to be immediately contemplated for a termination to be appropriate. P. 879-880. The Court also noted that at least one Tennessee case had held that termination was appropriate even where an immediate adoption was not contemplated. See *State Dep't of Children's Servs. v. D.G.B.*, 2002 WL 31014838 (Tenn. Ct. App. Sept.10, 2002).

Tenn. Code Ann. §36-1-113(a) explicitly states that, "[t]he chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4."

The mother also argues that the Trial Court abused its discretion in denying her motion for continuance until after her criminal trial, because if she testified at the termination hearing and had to invoke her Fifth Amendment privilege to keep from revealing incriminating information before her criminal trial, the effect would be detrimental. This issue has previously been addressed by this Court in the case of *Dept. of Children's Services v. FRG*, 2007 WL 494996 (Tenn. Ct. App. Feb. 16, 2007). In that case, after a lengthy and well-reasoned discussion of the subject, this Court ruled that a parent faced with a choice between testifying at the termination proceeding and "opening herself up to the possibility that her testimony will be used against her in a related criminal matter" or not testifying/invoking the privilege and permitting the trial court to draw an adverse inference from the refusal does not "unduly burden the employment of silence as to make the decision to testify involuntary". *Id., quoting Rachels v. Steele*, 633 S.W.2d 473 (Tenn. Ct. App. 1981). The Court in that case ruled that the Trial Court did not abuse its discretion in denying a continuance in that situation.

In this case, the Trial Court recognized that the mother could make the choice regarding whether or not she would testify, but the hearing had been scheduled for some time, and the mother had ample time to secure witnesses and otherwise prepare her case. The Trial Court's denying the mother's request for a continuance was in its sound discretion, and it has not been demonstrated that said discretion was abused. The Trial Court simply followed this Court's holding in the *FRG* decision. This issue is without merit.

Finally, the mother argues that there was not clear and convincing evidence that termination was in the child's best interests. We concur with the Trial Judge that in this case the evidence was clear and convincing that the mother had not made an adjustment in her circumstances, conduct or conditions such that it would be safe for the child to be with the mother, as she was still married to the man who allegedly abused and murdered the child's brother. The mother had not visited or maintained contact with the child because there was a no-contact order, and she had no meaningful relationship with the child. The evidence of the stepfather's brutality was overwhelming and disturbing, as was the evidence of the mother's denial and neglect, even up to the time of the Trial Court's hearing. There was no evidence the mother had done anything to make her home safe, as she refused to answer regarding whether she was still living with the stepfather, nor was there evidence that she had received counseling, help with her abuse of illegal drugs, or even that she had remedied the horrible conditions shown in the photographs presented to the Court. We affirm the Trial Court's finding that the evidence is clear and convincing that termination of the mother's parental rights was in the child's best interest.

The Judgment of the Trial Court is affirmed and the cost of the appeal is assessed to the mother.

_____
HERSCHEL PICKENS FRANKS, P.J.