### In re CFS–RELATED SECURITIES FRAUD LITIGATION.

99–CV–825–K(J), 00–CV–111–K(J), 99–CV–828–K(J), 00–CV–839–K(J), 99–CV–829–K(J), 99–CV–862–K(J), 99–CV–863–K(J), 99–CV–864–K(J), 99–CV–873–K(J), 00–CV–104–K(J), 00–CV–205–K(J), 99–CV–874–K(J), 00–CV–110–K(J), 99–CV–889–K(J), 99–CV–919–K(J), 00–CV–837–K(J), 00–CV–847–K(J), 02–CV–531–K(J), 02–CV–591–K(J), 02–CV–961–K(J), 00–CV–73–P(J).

United States District Court, N.D. Oklahoma.

March 10, 2003.

Company, PFL Life Insurance Company, Monumental Life Insurance Company, Bankers United Life Assurance Company, Amerus Life Insurance Company, Blackrock 2001 Term Trust, Inc., Blackrock Strategic Term Trust, Inc., Blackrock Investment Quality Term Trust, Inc., Blackrock Broad Investment Grade 2009 Term Trust, Inc., Blackrock Fixed Income Opportunity Fund, Blackrock Advantage Term Trust, Inc., Obsidian Onshore Fund, Blackrock Financial Management, Inc., Commercial Guaranty Assurance, Ltd., St. George Holdings, Ltd., St. George Investments I, Ltd., St. George Investments III, Ltd., GFC St. George, Ltd., CGA Investment Management, Inc., KRE Reinsurance, Ltd., Kern County Employees' Retirement Association, State of Ohio, Bureau of Workers' Compensation, Security Life and Trust Insurance Corporation, Southwestern Life Insurance Company, AIG–Hyperion Euribor ABS Fund PLC, Arkansas Teacher Retirement System, The Hyperion Total Return Fund, Inc., Enhance Reinsurance Company, Keyport Life Insurance Company, Hyperion Capital Management, Inc., Life Insurance Company of Georgia, Lion II Custom Investments LLC, Security Life of Denver Insurance Company, Southland Life Insurance Company, First Columbine Life Insurance Company, Midwestern United Life Insurance Company, Golden American Life Insurance Company, USG Annuity & Life Company, ING Investment Management, Inc., Curtis Bay Insurance Co., Ltd., St. George Corporation, A.F. Portfolio Limited, Bayer Corporation Master Trust, Unisys Master Trust, R.J. Reynolds Company Defined Benefit Master Trust, Nabisco Inc. Defined Benefit Trust, Western Asset Management Co., Chrysler Insurance Company, Hotchkis and Wiley Low Duration Fund, Hotchkis and Wiley To-

Lowell E. Sachnoff, Jeffrey T. Gilbert, James A. Rolfes, Sachnoff & Weaver Ltd, Chicago, IL, David L. Bryant, Bryant Law Firm, Tulsa, OK, for AUSA Life Insurance Company, Inc., Peoples Benefit Life Insurance

tal Return Bond Fund, Hotchkis and Wiley Balanced Fund, Hotchkis and Wiley Short–Term Investment Fund, Foodmaker Master Retirement Trust, Triangle Distribution Company Profit Sharing Plan Trust, AMR Investment Services Balanced Portfolio, ML Life Insurance Company of New York, Merrill Lynch Life Insurance Company, Black Rock Advisors, Inc., Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Life Assurance Company of Boston, and Global Eagle Insurance Corporation, AAA Investment Co., American Automobile Association, Inc., Abington Memorial, Agfa Corporation Pension Plan Master Trust, American Cast Iron, American Museum of Natural History, American National Can Retirement Trust, American Nuclear Insurers, American Red Cross Endowment Fund, Armco Master Pension Trust, Bayer Corporation Master Trust, Bell Atlantic Master Trust, Berea College, State Street Bank & Trust Company, Brandeis University, Carnegie Corporation of New York, Carnegie Institute of Washington, Carnegie Mellon University, Children's Hospital Foundation, Chubb Corporation Pension Master Trust, Cleveland Museum of Art, Cluett American Retirement Plan, Columbia University (CIM XII, L.L.C.), Copic, Direct Response Corporation, The Duke Endowment is a Trust, ELF Atochem North America, Inc., Enterprise Reinsurance Holdings, Educational Employees Supplementary Retirement System of Fairfax County, Fieldcrest Canon, First Energy System Master Retirement Trust, Ford Foundation, Ford Motor Company Master Trust, Forethought Life Insurance Company, France–Merrick Foundation, Gerling Global Reinsurance Company of America, Howard Heinz Endowment, Vira I Heinz Endowment, Hershey Principal Trust, Trustee for Milton Hershey School

Trust Milton Hershey School, Hershey Income Trust, Trustee for Milton Hershey School, Conrad N. Hilton Foundation, Harvey Hubell, Incorporated, Master Pension Trust, Marsh & McLennan U.S. Retirement Plan, Joint Industry Board/Electric Inc., W. Alton Jones Foundation, Inc., Kerr–McGee Corporation, John D. and Catherine T. MacArthur Foundation, Josiah Macy, Jr. Foundation, Mannesmann Corporation Master Trust, Manufacturers Investment Trust, Mary Flagler Cary Charitable Trust, Mas Funds–Multi Asset Class Portfolio, Mas Funds–Balanced Portfolio, Mas Funds–Fixed Income Portfolio, Mas Funds–High Yield Portfolio, Mas Funds–Intermediate Duration Portfolio, Mas Funds–Limited Duration Portfolio, Mas Funds–Special Purpose Fixed Income Portfolio, Mas Offshore Leveraged Fixed Income Fund, Minnesota State Board of Investment, The Northern Trust Company, Mount Holyoke College, Morgan Stanley Dean Witter, Global Opportunity Bond Fund, MSDW Sicav U.S. High Yield Bond Fund, Municipal Fire & Police Ret. of Iowa, New Church Investment Fund, New York City Firefighters Variable Supplement Fund, Philharmonic Symphony Society of New York, Northwest Community Healthcare, Northwestern Memorial Corporation, Olin Corporation, Commonwealth of Pennsylvania State Employees' Retirement System, Pacific Gas & Electric Corporation, PCFG Long Term Investment Co., Peco–Energy Company, The Peddie School, Premark International, Inc., Public School Teachers' Pension & Retirement Fund of Chicago, Rensaeleer Polytechnic Institute, Republic Funds, Joseph E. Seagram and Sons, Inc., Pension Plan for the Employees of Joseph E. Seagram and Sons, Inc., SKF USA Inc., Administrator of trust SKF USA Inc. Master

**1230**

Trust, Sun American Series Trust, Sunoco, Inc. Master Retirement Trust, Sunoco, Inc. Master Trust for Defined Contribution Plans, Syntex U.S. Employees Pension Trust, Syracuse University, TI Employees Pension Trust, Towers Perrin Pension Trust, Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania–High Yield, University of Rochester, Van Kampen High Yield and Total Return Fund, Van Kampen Worldwide High Income Fund, W.K. Kellogg Foundation Trust, Washington & Lee University, Wellesley College, Western Metal Industry Pension, Western PA Teamsters and Teamsters and Employers Pension Fund, X.L. Capital, Yeshiva University, York International Corporation, All Plaintiffs, Chubb & Son, Inc. Master Trust, Evelyn Haas & Walter Fund, Mas Funds–Multi–Market Fixed Income Portfolio, National Electric Contractors Assn. Pension Trust, Principia Corporation Pension Trust, American Cast Iron Pipe Company Pension Trust, Pacific Life Insurance Company and Ace Capital Re Overseas, Ltd.

Arnold Pagniucci, Lowell E Sachnoff, Jeffrey T Gilbert, James A Rolfes, Christopher R. Clark, David E. Lieberman, Bina Sanghavi, Sachnoff & Weaver Ltd., Chicago, IL, David L Bryant, Bryant Law Firm, Tulsa, OK, for All Plaintiffs, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Life Assurance Company of Boston and Golden Eagle Insurance Corporation.

Pamela Helena Goldberg, James M. Reed, Richard Mark Petrich, Hall, Estill, Hardwick, Gable, Golden & Nelson, Kenneth Louis Hunt, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, Daniel G. Webber, Jr., Ryan & Whaley, Oklahoma City, OK, for William R. Bartmann, Kathryn A. Bartmann and Wayne Learned.

Andrew R. Turner, Paul David Newsome, Jr., Conner & Winters, Tulsa, OK, Timothy Terah Trump, C. Raymond Patton, Conner & Winters, Montgomery L. Lair, Clark Otto Brewster, Brewster & De Angelis, PLLC, Tulsa, OK, for Jay L. Jones and Dimat Corporation.

Eric S. Eissenstat, Terry Warren Tippens, Warren F. Bickford, IV, John Barnes Heatly, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Michael C. Temple.

Tony Michael Graham, Tulsa, OK, for Charles D. Welsh.

Michael James Gibbens, James L. Kincaid, Crowe & Dunlevy, Paul DeMuro, Fred Dorwart Lawyers, Tulsa, OK, Thomas C. Rice, Elizabeth A. Fuerstman, Simpson, Thacher & Bartlett, Michael A. O'Connor, Chase Manhattan Bank Legal Dept., New York, NY, Frederic Dorwart, Jean Michael Medina, Fred Dorwart Lawyers, Tulsa, OK, for Chase Securities, Inc.

Mark Stanley Rains, William Andrew Caldwell, Andrea R. Kunkel, Eric D. Wade, Rosenstein, Fist & Ringold, Tulsa, OK, J. Douglas Mann, John Edward Howland, Rosenstein, Fist & Ringold, Tulsa, OK, Richard Parker Hix, Richard H. Foster, Doerner, Saunders, Daniel & Anderson, Tulsa, OK, Michael J. Moscato, Jr., Curtis, Mallet–Prevost, Colt & Mosle, LLP, New York, NY, Vance L. Beagles, Ralph I. Miller, Penny P. Reid, Weil, Gotshal & Manges, LLP, Dallas, TX, for Arthur Andersen, L.L.P/Andersen Worldwide.

Laurence Lindsay Pinkerton, James David Jorgenson, Pinkerton & Finn, Tulsa, OK, for Fitch, Inc. and Fitch Investors Service, L.P.

Max K. Naegler, Glenpool, OK, David Spears, Donna I Dennis, Lauren E Fischer, H Rowan Gaither, IV, Lucinda O. McConathy, Linda C. Imes, Richards,

Spears, Kibbe & Orbe, Jack G Stern, Steven I Froot, Barrett Gravante Carpinello & Stern LLP, New York, NY, Douglas Lee Inhofe, Sneed Lang PC, James David Jorgenson, Pinkerton & Finn, Tulsa, OK, Bradley K Beasley, David Allen Johnson, for Bank Austria AG, Bank of Scotland, American International Life Assurance Company of New York, AIG Life Insurance Company, Abbey National Treasury Services PLC, Cerberus Partners, L.P., Tri–Links Investment Trust, Life Insurance Company of the Southwest, Providentmutual Life and Annuity Company of America, Erste Bank Der Oesterreichischen Sparkassen AG, National Life Insurance Company, Provident Mutual Life Insurance Company, Orix USA Corporation, Union Central Life Insurance Company, and Bayerische Hypo–Und Vereinsbank, AG.

Glenn Reuben Davis, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, John K. Villa, Michael S. Sundermeyer, Craig D. Singer, Williams & Connolly, Washington, DC, for Mary C. Fontaine, Ger P. O'Donnell, Robert A. Helman, Bruce L. Gelman and Stuart M. Litwin and Mayer, Brown & Platt.

Charles Greenough, Mary L. Lohrke, Boone, Mary Beth Long, Riley Henderson Ross, III, Daniel Alberto Restrepo, Brad Mitchell Snyder, Ellen Elizabeth Oberwetter, R. Hackney Wiegmann, Kevin Michael Downey, James D. Holzhauer, Williams & Connolly, Washington, DC, for Mayer, Brown & Platt.

Jack LeDrew Neville, Jr., Hartzog, Conger, Cason & Neville, Oklahoma City, OK, Russell A. Cook, B.J. Rothbaum, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Caroline B. Benediktson.

John N. Hermes, McAfee & Taft, Oklahoma City, OK, for Moody's Investors Service, Inc.

William Robert Grimm, Barrow & Grimm, PC, Tulsa, OK, James E. Spiotto,

Mark D. Rasmussen, Chapman & Cutler, Chicago, IL, for Wells Fargo & Company.

John Jay Carwile, K. Clark Phipps, Sejin C. Brooks, Christine M. Benson, Thomas Clifton Daniels, Atkinson, Haskins, Nellis, Holeman, Phipps, Brittingham & Gladd, Tulsa, OK, for Bank Hapoalim B.M., Pioneer Insurance Company, Amwest Surety Insurance Company, Condor Insurance Company, Old Guard Insurance Company, American Community Mutual Insurance Company, American Progressive Life and Health Insurance Company of New York, American Pioneer Life Insurance Company of New York, United Teacher Associates Insurance Company, Federated Rural Electric Insurance Corp., Central Reassurance Corp. & Equitable Life, Physicians Mutual Insurance Company, Ozark National Life Insurance Company, Central States Health and Life Company of Omaha, Medico Life Insurance Company, Mutual Protective Insurance Company, Guarantee Trust Life Insurance Company, Physicians Life Insurance Company, and All Plaintiffs.

Carol Wood English, Boesche McDermott & Eskridge, Tulsa, OK, Debra Lehanski Langer, Kenneth I Schacter, Edward L Powers, Bonnie Host, Hope M Pecullan, Bingham McCutchen LLP, New York, NY, for MPF Limited, Pegasus Two Limited, Pegasus Three Limited, Pegasus Four Limited, Iowa State University Foundation, Alliance Capital (Luxembourg) S.A., Mansurii Doriimu and Mansurii Doriimu, II.

Terry W West, West Law Firm, Shawnee, OK, John N Goodman, Oklahoma City, for James D Sill Jr.

George S Corbyn, Jr., Corbyn & Hampton, Amy Jo Pierce, Ryan & Whaley, Oklahoma City, OK, for Bruce Hadden.

Gregory G Meier, Meier Morgan Hatley & Stock, Tulsa, OK, for Asset Allocation and Management Company.

Jack R Givens, Charles Michael Copeland, William George LaSorsa, Jones Givens Gotcher & Bogan, Tulsa, OK, for Structured Finance Advisors, Inc.

James A Rolfes, Sachnoff & Weaver Ltd, Chicago, IL, Charles Robert Burton, IV, R Thomas Seymour, Seymour Law Firm, Tulsa, OK, Joseph F Wayland, Thomas P Briody, Simpson Thacher & Bartlett, Linda C Imes, Richards Spears Kibbe & Orbe, New York, NY, Mary Beth Long, Williams & Connolly, Washington, DC, for Deposition Protocol Committee.

Charles Robert Burton, IV, R. Thomas Seymour, Seymour Law Firm, Fred Randolph Lynn, Tulsa, OK, for Gertrude A. Brady.

### ORDER

JOYNER, United States Magistrate Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1232
   A. BACKGROUND: THE CIVIL LITIGATION AGAINST BARTMANN AND THE INSTITUTIONAL DEFENDANTS ......................... 1233
      1. COMMERCIAL FINANCIAL SERVICES ("CFS") .................. 1233
      2. THE DEFENDANTS ......................................... 1233
      3. SUMMARY OF PLAINTIFFS' CLAIMS .......................... 1234
         (a) THE CORE FRAUD ALLEGED TO HAVE BEEN COMMITTED BY CFS ........................................ 1234
   B. BACKGROUND: CRIMINAL ACTION AGAINST DEFENDANT BARTMANN ............................................... 1235
   C. DISCOVERY HISTORY ....................................... 1235

II. DISCUSSION ................................................. 1236
   A. BARTMANN HAS NO CONSTITUTIONAL RIGHT TO A STAY—IT IS DISCRETIONARY WITH THE COURT ........................ 1236
   B. STAY AS TO DISCOVERY AGAINST BARTMANN—APPLICATION OF THE SIX-FACTOR TEST ................................. 1236
      1. OVERLAP OF ISSUES IN THE CRIMINAL AND CIVIL CASES .... 1237
      2. STATUS OF THE CRIMINAL CASE ........................... 1237
      3. INTERESTS OF THE PLAINTIFFS ........................... 1238
      4. INTERESTS OF THE DEFENDANT BARTMANN ................... 1239
         (a) ADVERSE INFERENCES ................................ 1240
         (b) DRAIN ON RESOURCES ............................... 1241
         (c) POTENTIAL PREJUDICE FROM PUBLICITY ............... 1241
      5. INTERESTS OF THE COURT ................................ 1241
      6. INTEREST OF THE PUBLIC ................................ 1242

III. CONCLUSION ................................................ 1242

### I. INTRODUCTION

On February 7, 2003, Defendant William R. Bartmann ("Bartmann") moved this Court, pursuant to Fed.R.Civ.P. 26, to stay all discovery against him pending the conclusion of criminal proceedings currently pending against him. *See United States of America v. William R. Bartmann*, Case No. 02–CR–163–H. J.P. Morgan Securities, Inc. ("JPMSI") filed its brief in opposition to Bartmann's motion to stay discovery against him, arguing that all the Defendants, particularly the Institutional Defendants, will be severely prejudiced if Bartmann avoids discovery at this time while other depositions proceed. Defendant

Mayer, Brown, Rowe & Maw ("Mayer, Brown") filed a brief in opposition to Bartmann's motion to stay discovery against him. Certain Plaintiffs also filed a memorandum in opposition to a stay.

For the reasons discussed below, the Court **DENIES** Bartmann's Motion to Stay Discovery against him. The Court Orders that Bartmann's deposition be sealed and prohibited from use for any purpose outside the civil proceeding except for perjury or impeachment.

### A. BACKGROUND: THE CIVIL LITIGATION AGAINST BARTMANN AND THE INSTITUTIONAL DEFENDANTS

The above-captioned cases are securities fraud cases brought by securities holders against individuals and entities allegedly involved with the sale of securities for the benefit of Commercial Financial Services, Inc. ("CFS").

### 1. Commercial Financial Services ("CFS")

CFS is a bankrupt Oklahoma corporation which until late 1998 was primarily in the business of purchasing and attempting to collect on defaulted credit card receivables. The captioned cases are all securities fraud cases. The securities at issue are asset-backed securities. An asset-backed security is a financial instrument which, unlike a traditional security, is secured by a discrete pool of assets and not the credit and assets of a company. The asset-backed securities in this case were to be backed by billions of dollars of charged-off credit card receivables.

In 1995, CFS began to use a relatively new financing model known as a securitization. The parties allege that, from May 1995 to September 1998, CFS raised approximately $1.6 billion by issuing 13 asset-backed securitizations. The securities sold by the trusts were unregistered securities. There was no registration statement on file with the SEC which investors could consult. Prior to each transaction, investors were provided with due diligence books containing offering materials, including a private placement memorandum ("PPM"). CFS and Chase worked to ensure that the securities offered by the trusts received an "A" rating from rating agencies like Standard and Poor's Ratings Services, Duff & Phelps Credit Rating Company, Moody's Investment Services and Fitch ICBA.

### 2. The Defendants

Due to the bankruptcy code's automatic stay provision, 11 U.S.C. § 362, CFS has not been named as a defendant by any of the Plaintiffs in the captioned cases. The following Defendants have, however, been sued by Plaintiffs:

| | |
|---|---|
| **William Bartmann** | CFS' co-founder, Chairman of the Board of Directors, President, and member of CFS' Executive Committee. |
| **Kathryn Bartmann** | CFS' co-founder, CEO and member of CFS' Executive Committee. |
| **Jay Jones** | CFS' co-founder, Executive Vice President, Director of Technology Planning and member of CFS' Executive Committee. |
| **Gertrude Brady** | CFS' Director of Investor Relations and member of CFS' Executive Committee. |
| **Michael Temple** | CFS' CFO and member of CFS' Executive Committee. |

| | |
|---|---|
| **Bruce Hadden** | CFS' Director of Business Development (bought and sold credit card receivables). |
| **Caroline Benediktson** | Director, Vice–President and General Counsel of CFS, and a member of CFS' Executive Committee. |
| **Chase Securities, Inc./ J.P. Morgan Securities** | CFS' investment banker; securities placement agent and initial purchaser of the trusts' securities. |
| **Mayer, Brown, Rowe & Maw** | Outside counsel for CFS. |
| **Arthur Andersen** | Outside accounting firm for CFS. |
| **Dimat Corporation/ JLJ, Inc.** | An Oklahoma corporation with its principal place of business in Shawnee, Oklahoma. Now known as JLJ, Inc. |
| **James Sill** | Incorporator of, President of, and attorney for Dimat Corporation. |

### 3. Summary of Plaintiffs' Claims

#### (a) The Core Fraud Alleged to Have been Committed by CFS

The Plaintiffs in this litigation are all holders of SMART and/or GREAT securities issued, through Chase, by one of the SMART or GREAT trusts. Because the trusts had no assets other than their portfolios of charged-off credit card debt, the only way Plaintiffs would receive any money from their investment was if CFS collected a certain percentage of the bad credit card debt in the trusts' portfolios. Plaintiffs allege, therefore, that central to their collective decisions to purchase the trusts' notes were representations made about CFS's ability to service the credit card debt in the trusts' portfolios. According to Plaintiffs, CFS all but guaranteed a return on the investor's investment when it claimed that, with the assistance of a complex pricing model, it had projected the value (*i.e.*, ECR) of each pool of charged-off receivables held by the trusts to be far in excess of what investors had paid for that pool of receivables.

Plaintiffs allege that, almost from the inception, it became clear to CFS that its ECR model did not accurately predict the value of the credit card receivables held by the trusts, and that CFS would not be able to achieve its monthly collection targets based solely on its ability to collect from the credit card debtors. Plaintiffs allege that, as owners of more than 80% of CFS stock, Jay Jones and William Bartmann would cause CFS to distribute cash to them; the cash would be transferred to the account of Calamity Jones Entertainment, Inc. ("Calamity Jones"), a company wholly-owned by Jay Jones; Calamity Jones would then make a loan to Dimat for the value of the receivables Dimat purchased from the trusts. Thus, Plaintiffs allege that after the initial securitizations, CFS's securitizations became a classic Ponzi scheme, whereby CFS used cash from later securitizations to pay the principal and interest on the earlier securitizations. According to Plaintiffs, CFS was not paying investors with proceeds collected from the credit card debtors, but with proceeds from each successive securitization. Plaintiffs allege that CFS itself was also living off the proceeds of the securitization transactions, and not off its servicing fees.

The crux of the claims brought by Plaintiffs against the named Defendants is their allegation that, knowing the shortcomings in CFS' touted business model, Defendants

made numerous material misrepresentations and omissions about CFS's operations and about CFS's historic and future ability to service the portfolios of charged-off credit card debt held by the trusts.

## B. BACKGROUND: CRIMINAL ACTION AGAINST DEFENDANT BARTMANN

A 58–count Indictment was returned against Bartmann on December 3, 2002, after a federal grand jury charged him with numerous violations of federal law, including conspiracy, mail fraud, wire fraud, bank fraud, and money laundering, in connection with his ownership and management of CFS. *See United States of America v. William R. Bartmann,* Case No. 02–CR–163–H. Bartmann was the founder, majority owner, president, and chairman of the board of directors at CFS. Bartmann's trial in the criminal proceeding is set to commence September 8, 2003. The anticipated duration of the trial is four (4) weeks.

## C. DISCOVERY HISTORY

The *In re CFS Securities Fraud Litigation* lawsuits were stayed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), pending the determination by the Court of the pending motions to dismiss. The PSLRA stay was lifted by the Court in May of 2002. Document discovery began after the stay was lifted and "Phase One" discovery (document production) began. The parties, through a coordinated effort, established a document repository for the production of documents. Pursuant to the case management orders of the Court, the parties have engaged in and completed a complex "Phase One" document discovery process that has involved: (i) the issuance of over 150 nonparty subpoenas, (ii) the production of millions of pages of potentially relevant documents by the parties and subpoenaed nonparties, and (iii) the creation of a document repository for the housing of these documents. All told, there are between 700 and 900 boxes of documents in the RLS Depository and another 9,000 to 10,000 boxes in other centralized locations. The majority of document discovery by the parties occurred by November 11, 2002.

The parties have additionally expended a great deal of effort coordinating discovery in these pending actions with similar pending actions in state court. This Court has held joint hearings with the state court judge to coordinate discovery issues.

The Court established a Deposition Protocol Committee by Order dated September 20, 2002 to set up deposition schedules. Those schedules are now set, and double-tracked two per day fact witness depositions held four days each week commenced February 18, 2003. Generally, as many as two depositions can be scheduled by the parties on each day. Depositions of the named individual Defendants are to be single-tracked. Plaintiffs have identified seventy-four (74) fact witnesses they intend to depose, and Defendants have identified one hundred seventy-six (176) fact witnesses to depose prior to the deposition deadline of December 17, 2003.

On January 29, 2003, Plaintiffs noticed Bartmann in the above-referenced cases for a deposition commencing on March 10, 2003 and continuing to March 12, 2003. On February 7, 2003, Defendant Bartmann moved this Court, pursuant to Fed. R.Civ.P. 26, to stay all discovery against him pending the conclusion of criminal proceedings currently pending against him in order to prevent undue prejudice.

JPMSI filed its brief in opposition to Bartmann's motion to stay discovery against him on February 20, 2003, arguing that all the Defendants, particularly the Institutional Defendants, will be severely prejudiced if Bartmann avoids discovery at this time while other depositions proceed. At a minimum, JPMSI argues that Bart-

mann should not be permitted to pursue cross-claims and third-party complaints against JPMSI while avoiding discovery against him. Mayer, Brown filed its brief in opposition to a stay on February 20, 2003. Additionally, certain Plaintiffs in the CFS–Related Securities Litigation have filed a memorandum in opposition to Bartmann's motion to stay discovery against him, arguing that they will be severely prejudiced if the Court grants Bartmann's motion.

## II. DISCUSSION

### A. BARTMANN HAS NO CONSTITUTIONAL RIGHT TO A STAY—IT IS DISCRETIONARY WITH THE COURT

None of the parties argue that Bartmann is constitutionally entitled to a stay of the civil proceedings pending the outcome of his criminal proceedings. Rather, the decision whether to stay the civil proceedings until the conclusion of the criminal litigation is entirely discretionary with the Court.

> [T]he Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.... Nevertheless, a court may decide *in its discretion* to stay civil proceedings ... when the interests of justice seem to require such action.

See *In re Worldcom, Inc. Securities Litigation*, 2002 WL 31729501, at *3 (S.D.N.Y. Dec.5, 2002) (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir.1986)) (emphasis added). See also *Digital Equip. Corp. v. Currie Enterprises, et al.*, 142 F.R.D. 8, 11 (D.Mass.1991) ("It is not inherently unconstitutional ... to proceed with parallel civil and criminal proceedings."); *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Arden Way Assoc. v. Boesky*, 660 F.Supp. 1494, 1496–97 (S.D.N.Y.1987).

In this case, Bartmann argues that a stay is necessary in the civil proceedings because he will suffer extreme prejudice and his right to exercise his Fifth Amendment privilege against self-incrimination will be undermined. Conversely, certain Plaintiffs, along with the Institutional Defendants, emphatically assert that a stay in discovery against Bartmann will result in substantial prejudice to them.

> A stay is one of several procedures available to the district court to balance the interest of the other parties in moving forward with the litigation against the interests of a defendant asserting Fifth Amendment rights who faces the choice of being prejudiced in the civil litigation if those rights are asserted or prejudiced in the criminal litigation if those rights are waived.

See *In re Worldcom*, 2002 WL 31729501, at *3.

A general stay is just one of several procedures available. Other options may be utilized in lieu of imposing a stay. These alternate tools include the imposition of protective orders, sealed interrogatories, a stay for a finite period of time, or a stay limited to a specific subject matter. See *Digital Equip. Corp.*, 142 F.R.D. at 12 (citing *United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir.1990) (protective order prohibiting use of forfeiture claimant's deposition transcripts and interrogatories except for perjury and impeachment)).

### B. STAY AS TO DISCOVERY AGAINST BARTMANN—APPLICATION OF THE SIX-FACTOR TEST

In determining whether a stay should be entered, several courts have employed a six-factor test in which they weigh:

(1) The extent to which issues in the criminal case overlap with those presented in the civil case;

(2) The status of the case, including whether the defendant has been indicted;

(3) The private interests of the plaintiff in proceeding expeditiously versus the prejudice to plaintiff caused by the delay;

(4) The private interests of, and burden on, the defendant;

(5) The interests of the Court; and

(6) The public's interest.

See *In re Worldcom*, 2002 WL 31729501, at *3–4. See also *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y.1995); *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, 2002 WL 844345, at *2 (S.D.N.Y. May 2, 2002); *Boesky*, 660 F.Supp. at 1496–97; *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Serv. Corp.*, 225 F.Supp.2d 263, 264–65 (E.D.N.Y.2002); *White v. Mapco Gas Prod., Inc.*, 116 F.R.D. 498, 502 (E.D.Ark. 1987).

For the reasons discussed below, a fact-specific examination of the factors identified in the *In re Worldcom* case indicates that a stay as to all discovery against Bartmann is not appropriate in the CFS–Related Securities Litigation.

### 1. Overlap of Issues in Criminal and Civil Cases

■ The first fact-intensive inquiry involves an analysis of the overlap of issues in the criminal and civil cases. The *In re Worldcom* Court noted that "[t]he first question to be resolved is the extent to which the issues in the criminal case overlap with those present in the civil case, since self-incrimination is more likely if there is a significant overlap." See *In re Worldcom*, 2002 WL 31729501, at *4 (citing *Transworld Mech., Inc.*, 886 F.Supp. at 1139).

In this case, the facts alleged against Bartmann in both the criminal and civil cases are essentially identical, as Bartmann is alleged to have been the "central figure" at the heart of the controversies. Bartmann argues that he is under indictment for the same conduct that is at the center of the civil litigation. Bartmann has been charged with numerous violations of federal law, including conspiracy, mail fraud, wire fraud, bank fraud, and money laundering related to his ownership and management of CFS. The civil proceedings allege that Bartmann defrauded investors in the CFS securitized transactions in connection with his ownership and management of CFS. The civil cases involve the sales of securities and will likely utilize the same witnesses and exhibits as the criminal action. The Institutional Defendants contend that Bartmann "is *the* person that links the numerous plaintiffs, defendants, third-party defendants and tens of non-party witnesses."

The Court finds that there is essentially a complete overlap of issues present in the criminal and civil cases.

### 2. Status of the Criminal Case

The second factor courts weigh in determining the propriety of entering a stay is the status of the criminal case. See *In re Worldcom*, 2002 WL 31729501, at *3–4. In analyzing the status of the criminal case, the issue of whether a defendant has been indicted is material. *Id.* at *4. The analysis apparently centers upon whether the criminal case is: (1) in the investigation stage, with no indictment; (2) pending indictment with a set trial date; or (3) where the defendant has pled guilty and is awaiting sentencing. Courts have generally declined to impose a stay in the civil proceedings where a defendant is under criminal investigation, but has not yet been indicted. *Id.* (citing *Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 576 (S.D.N.Y.2001)).

In the present case, Bartmann has been indicted and has received a set trial date of September 8, 2003. As previously discussed, Bartmann is under indictment for the same conduct at the center of the civil actions. "[T]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993). *See also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.1980) (*en banc*). This is because "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued. . . ." *Transworld Mech., Inc.*, 886 F.Supp. at 1139. *See also Sterling Nat'l Bank*, 175 F.Supp.2d at 577.

After a criminal indictment has been filed, courts are split as to the propriety of imposing a stay. Compare *Travelers Cas. & Sur., Inc.*, 2002 WL 844345, at *2 (declining to stay civil proceedings where defendants were under indictment); *Boesky*, 660 F.Supp. at 1496–1500 (declining to stay civil proceedings where defendant was facing sentencing); *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y.1980) (declining to impose a stay where defendant was under indictment); with *Travelers Cas. & Sur. Co.*, 2002 WL 844345, at *2 (S.D.N.Y. May 2, 2002) (granting stay where defendants were under indictment and where stay was requested by district attorney); *Transworld Mech., Inc.*, 886 F.Supp. at 1141 (granting stay following indictment of individual defendants); *Volmar Distribs., Inc.*, 152 F.R.D. at 39 (S.D.N.Y.1993).

Defendant argues, and one court has said, that most courts grant a stay postindictment and before a plea has been entered. *See Transworld Mech., Inc.*, 886 F.Supp. at 1139–40. A closer review of the cases granting the stay finds that "most" courts do not necessarily grant a stay under facts similar to the present case. In several cases, the request for the stay was made or joined by the United States Attorney or the District Attorney, representing a strong public interest, or was unopposed by the plaintiff. *See In re Worldcom, Inc. Securities Litigation*, 2002 WL 31729501 (S.D.N.Y. Dec.5, 2002); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Serv. Corp.*, 225 F.Supp.2d 263 (E.D.N.Y.2002); *Rosenthal v. Giuliani*, 2001 WL 121944 (S.D.N.Y.2001). In the present action, the United States Attorney has not joined the request for the stay, and all Plaintiffs and the remaining Defendants adamantly oppose the imposition of a stay.

There are cases with facts similar to the present case in which a stay was granted. *See Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134 (S.D.N.Y. 1995); *Dienstag v. Bronsen*, 49 F.R.D. 327 (S.D.N.Y.1970). Other courts have opted to deny a stay under facts similar to those in the present case where the defendant has already been indicted. *See Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118 (S.D.N.Y.1980); *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, 2002 WL 844345 (S.D.N.Y. May 2, 2002); *Digital Equip. Corp. v. Currie Enterprises, Inc.*, 142 F.R.D. 8 (D.Mass.1991). This leads the Court to a fact-specific analysis of the remaining factors.

### 3. Interests of the Plaintiffs

The third consideration involves the private interests of the Plaintiffs in proceeding expeditiously. The CFS–Related Securities Litigation is a highly complex civil litigation involving over five hundred (500) Plaintiffs suing for damages of over $1.6 billion. The initial Complaint was filed in September of 1999 against eleven (11) De-

fendants, including fifty-four (54) cross-claims and third-party claims.

The Court finds that staying Bartmann's deposition would prejudice Plaintiffs' interests in the civil action, noting their need to depose a central witness early in the litigation to comply with the rigid and painstakingly devised Deposition Protocol Procedure for deposing over two hundred (200) witnesses. The Institutional Defendants will be prejudiced as well if the stay is granted, for the same reasons. Plaintiffs and Defendants are entitled "to a speedy discovery process. This is particularly true in the context of complex litigation which must proceed in an efficient manner." *See Digital Equip. Corp.*, 142 F.R.D. at 12 (citing *Boesky,* 660 F.Supp. at 1497).

Plaintiffs further assert that a stay will diminish their ability to obtain "negative inferences" from Bartmann's invocation of his Fifth Amendment privilege. Plaintiffs correctly argue that the stay should be denied to require Bartmann to assert his Fifth Amendment privilege so that Plaintiffs can preserve any right to a negative inference in the civil proceeding. A stay would preclude or delay Plaintiffs' right to such negative inferences. Plaintiffs are entitled to preserve the fact that they were deprived of information from the most central figure in the civil proceedings by a Fifth Amendment assertion at the beginning of six months of over two hundred (200) depositions. If Bartmann's deposition is delayed until the conclusion of discovery, any negative inferences received at that time would be of less impact.

Delay could impact the Plaintiffs' ability to collect on a judgment and be made whole. *See Travelers Cas. & Sur. Co.,* 2002 WL 844345, at *3. Finally, to the extent that Bartmann is still pursuing cross-claims and third-party claims, it would be manifestly unfair to grant him the benefit of participating in discovery of other parties while enjoying the protections of a stay. Currently pending in the Court are ten (10) cross-claims and third-party claims by Bartmann against JPMSI. Bartmann filed a stipulation of dismissal of his claims against Mayer, Brown on February 27, 2003. Bartmann also filed a stipulation of dismissal of his claims against Arthur Andersen on March 7, 2003. During oral argument before the Court on February 28, 2003, Bartmann's counsel represented that Bartmann planned to dismiss his remaining claims against JPMSI. As of this date, however, no stipulation of dismissal has been filed, and the claims remain pending. Granting a stay at this point in the litigation, particularly if Bartmann continues to assert cross-claims and third-party claims, would severely hamper the momentum of the lawsuit and the progress made to date. *See, e.g., Starlight Int'l, Inc. v. Herlihy,* 1998 WL 560045, at *3 (D.Kan. Aug.4, 1998) (Court declined to impose a stay where less than three months of discovery remained and defendants were actively pursuing lawsuits for damages).

## 4. Interests of the Defendant Bartmann

The foregoing interests of the Plaintiffs must be balanced against the fourth factor in the analysis, which involves an evaluation of the private interests of and burden on the Defendant in the lawsuit. Bartmann contends that allowing his deposition to be taken at this time would result in significant harm to him in both his criminal and civil cases. First, Bartmann argues that an adverse inference could be drawn if he chooses to invoke his Fifth Amendment right in the civil proceedings. *See Am. Express Bus. Fin. Corp.,* 225 F.Supp.2d at 265; *Dienstag,* 49 F.R.D. at 329; *In re Worldcom,* 2002 WL 31729501, at *7. Second, Bartmann asserts that intensive civil discovery would divert essen-

tial resources necessary to the defense of his criminal proceedings. Third, Bartmann contends that a stay is necessary to prevent prejudice in his criminal trial from a release of information not appropriate for use in the criminal proceedings. *See Kordel,* 397 U.S. at 12, 90 S.Ct. 763.

### (a) Adverse Inferences

■ In terms of the quandary Bartmann will encounter regarding potential adverse inferences from exercising his Fifth Amendment privilege, the Court notes at the outset that it is not unconstitutional to force a defendant to make this decision. *See Digital Equip. Corp.,* 142 F.R.D. at 13 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (Fifth Amendment does not bar adverse inference where privilege is claimed by a party to a civil cause)); *Am. Express Bus. Fin. Corp.,* 225 F.Supp.2d at 265; *In re Worldcom,* 2002 WL 31729501, at *7. Bartmann argues that if he invokes the Fifth Amendment privilege, the negative inferences could severely damage his defense to the civil charges and lessen his chance of success on cross-claims. Conversely, if Bartmann provides substantive testimony at the deposition, he runs the risk of self-incrimination.

Some courts have supported Bartmann's suggested solution to his Hobbesian dilemma. The *Transworld Mech., Inc.* Court noted that the "defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case" trumped the plaintiffs' interests in the expeditious resolution of their case. The Court further found that the defendants'

interests outweighed judicial efficiency in this circumstance. *See Transworld Mech., Inc.,* 886 F.Supp. at 1139–40. *See also Dienstag,* 49 F.R.D. at 329.

Other courts have noted a variety of procedures that can be utilized to lessen the detriment to a defendant facing such a quandary. Less drastic methods in lieu of a stay include sealing answers to interrogatories, sealing answers to depositions, imposing protective orders, imposing a stay for a finite period of time, limiting a stay to a particular subject, or limiting disclosure only to counsel.[1] *See Digital Equip. Corp.,* 142 F.R.D. at 12–13 (citing *SEC v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (court may impose protective orders or postpone civil discovery in the interests of justice); *United States v. Parcels of Land,* 903 F.2d 36, 44 (1st Cir. 1990) (protective order prohibiting use of forfeiture claimant's deposition transcripts and interrogatories except for perjury and impeachment)). *See also Mid–America's Process Serv. v. Ellison,* 767 F.2d 684, 687 (10th Cir.1985) (denying a stay and noting that "[a]lthough postponement might be appropriate in a particular instance, we believe that the law does not require postponement of civil discovery until fear of criminal prosecution is gone. The propriety of postponement is a matter for the exercise of the trial court's discretion."); *Am. Multi–Cinema, Inc. v. Jones,* 1989 WL 32211, at *1 (D.Kan. Mar.30, 1989) (denying defendant's motion to stay).

■ The Court finds that a sensible option to resolve this issue is to decline the imposition of a stay of discovery against

---

1. Senior United States District Judge Milton Pollack of the Southern District of New York, author of the *Arden Way Assoc. v. Boesky* opinion, stresses "that a general stay of all civil discovery is not by any means the best option available to the court or to the litigants." Senior United States District Judge Milton Pollack of the Southern District of New York, *Parallel Civil and Criminal Proceedings,* Transferee Judges' Conference, October 17–19, 1989, 129 F.R.D. 201, 211.

*See Digital Equip. Corp.,* 142 F.R.D. at 13 n. 9.

Bartmann, seal his deposition, and direct that it not be used for any purpose outside the civil proceeding except for perjury or impeachment.[2]

The detriment to Bartmann from any negative inferences is speculative at this point. When the civil proceedings go to trial, the criminal proceedings should be resolved, and Bartmann will have different considerations as to the need for Fifth Amendment protections. At that stage of the proceedings, the trial judge will determine the extent of any negative inferences based upon the events that have transpired prior to that time. *See Wilson v. Olathe Bank*, 1998 WL 184470 (D.Kan. 1998) (denying a stay and noting that Plaintiffs might also be prejudiced by the defendant's assertion of his Fifth Amendment privilege, potentially causing the defendant's deposition to be reopened after the criminal proceedings concluded).

**(b) Drain on Resources**

Bartmann argues that he should not be forced to defend both the criminal and civil claims simultaneously because it would constitute a substantial drain on his resources and divert time and energy necessary for his defense in the criminal proceedings. Bartmann maintains separate counsel for the criminal and civil proceedings. In *Paine, Webber, Jackson & Curtis, Inc.*, the Court opined that "[n]o reason has been advanced why these lawyers cannot devote themselves to matters involved in this suit while those who represent him in the criminal matter take care of his interests in that proceeding." *See Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1118–19 (S.D.N.Y.1980).

**(c) Potential Prejudice from Publicity**

Bartmann also argues that he faces the risk of undue prejudice in his criminal proceedings from potential publicity leaks in the civil litigation. It is undisputed that Bartmann is a significant presence in headline news related to the CFS litigation. However, the Court finds that the mere risk of a leak that Bartmann has asserted his Fifth Amendment privilege does not justify granting a general stay of discovery against him in the civil litigation. Bartmann's attorney estimated that the potential for a leak was less than one percent. Risks of press leaks are further diminished where the Court has provided the safeguard of sealing Bartmann's deposition and prohibiting its use for any purpose outside the civil proceedings except for perjury or impeachment.

**5. Interests of the Court**

The fifth factor in determining whether a stay should be granted contemplates the interests of the Court. The Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay. This interest is enhanced in complex litigation such as the CFS case, which has been pending since 1999. For the past several months, counsel for the Plaintiffs and Defendants have devoted a substantial number of hours in formulating a two-tier deposition track schedule. This process has involved coordinating the schedules of the attorneys in the action, the two hundred (200) plus witnesses the parties are deposing, and other terms of the deposition order. Depositions began February 17, 2003. Any delay or disruption of the schedule would severely hamper the prog-

**2.** The Court may seal depositions pursuant to Fed.R.Civ.P. 30(d), which allows a court to "limit the scope and manner of the taking of the deposition as provided in Rule 26(c)." Subpoenas can be modified as provided under Fed.R.Civ.P. 45(b). Additionally, the Court may prohibit the use of depositions, interrogatories, and affidavits except for the limited purposes of impeachment or perjury. *See Digital Equip. Corp.*, 142 F.R.D. at 15 n. 11; *United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir.1990).

ress made to this date. The Court also has the dual interest of insuring that Bartmann's criminal prosecution proceed quickly without constitutional improprieties.

Bartmann asserts that resolution of the criminal proceeding could limit and focus the issues for the civil trial if the stay is granted. The Court finds that such a course of action would be of little benefit. The interest of the Plaintiffs in the expeditious resolution of the lawsuit, and the interest of the Court in efficiently proceeding with the civil case, outweigh any detriment to Bartmann described above. *See Digital Equip. Corp.*, 142 F.R.D. at 14 (denying a stay and noting the court's lack of persuasion by defendant's argument that resolution of the criminal proceedings might streamline issues for the civil litigation. "[T]his court finds it unrealistic to rely upon fortuitous events to manage its docket. [A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits interferes with judicial administration.") (citations omitted).

### 6. Interest of the Public

The sixth, and final, factor involves an evaluation of the public's interest in the propriety of granting a stay. "The public has an interest in both the prompt resolution of civil cases as well as the prosecution of criminal cases." *See Digital Equip. Corp.*, 142 F.R.D. at 14. *See also Arden Way Assoc. v. Boesky*, 660 F.Supp. 1494, 1500 (S.D.N.Y.1987) (public interest in integrity of securities market militates in favor of expeditious prosecution of civil litigation).

When determining the public's interest, it is normally a question of what interest the United States Attorney has in the request for a stay. The United States Attorney may desire the imposition of a stay to (1) preserve a defendant's assets, or (2) to make use of cooperating witnesses. None of these situations are implicated in the case at bar. The Court in *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC* specifically noted the failure of the State to join in the request for a stay as a factor in denying the stay. *See* 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002). Similarly, neither the Plaintiffs in the civil action nor the United States Attorney have joined in the request to stay discovery against Defendant Bartmann in this matter. The Plaintiffs in the civil action oppose Bartmann's request.

### III. CONCLUSION

Accordingly, this Court, having balanced the equities at issue, finds that less drastic measures can adequately protect the pertinent interests in lieu of granting a general stay of discovery against Bartmann. For the foregoing reasons, the Court **DENIES** Defendant William R. Bartmann's Motion to Stay Discovery against him. However, mindful of the quandary in which Bartmann is placed by the adverse inferences which may be taken against him for asserting his Fifth Amendment privilege against self-incrimination, and the potential prejudice from any leaks to the public if he invokes the Fifth Amendment, the Court directs that Bartmann's deposition be sealed and not used for any purpose outside the civil proceeding except for perjury or impeachment.

IT IS SO ORDERED.