# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 4, 2020 Session

## JENNIFER BENKE BOTTORFF v. CHRISTIAN TODD BOTTORFF

**Appeal from the Circuit Court for Davidson County**
**No. 12D-2766          Phillip R. Robinson, Judge**

_____

### No. M2019-00676-COA-R3-CV
_____

In this post-divorce custody modification action, the Davidson County Circuit Court ("trial court") entered a protective order requiring the return and permanent destruction of documents, including copies, that were allegedly central to the mother's separate professional malpractice action against the father's testifying expert. The trial court subsequently denied the mother's motion for relief from the protective order, wherein she sought access to the documents for her use in the professional malpractice action. Although the mother filed a motion seeking to alter or amend the trial court's order, the trial court also denied that motion. The mother has appealed. Following our thorough review of the record and applicable case law, we vacate the trial court's order denying the mother's motion to alter or amend as it pertains to the documents produced during discovery. We remand this issue to the trial court for further hearing, as necessary, and determination of the issue based upon the appropriate factors. We reverse the trial court's order denying the mother's motion to alter or amend as it pertains to the trial transcript and exhibits. We deny the father's request for an award of attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Jerry E. Martin and Seth M. Hyatt, Nashville, Tennessee, for the appellant, Jennifer Benke Bottorff.

Helen Sfikas Rogers and George D. Spanos, Nashville, Tennessee, for the appellee, Christian Todd Bottorff.

**OPINION**

## I. Factual and Procedural History

Christopher Todd Bottorff ("Father") and Jennifer Benke Bottorff ("Mother") were divorced by final decree entered March 26, 2013, and the trial court concomitantly entered a Permanent Parenting Plan order ("PPP") regarding the parties' respective responsibilities for their two minor children. In the PPP, Mother was named primary residential parent of the children and was granted 223 days per year of co-parenting time. Father enjoyed 142 annual co-parenting days.

On May 4, 2017, Father filed an "Emergency *Ex Parte* Petition for Immediate and Exclusive Custody and Change of Custody" ("the Emergency Petition"). In the Emergency Petition, Father averred that the children's attitudes toward him had become increasingly negative following the parties' divorce. Father alleged that Mother had failed to exercise her parental authority and was too permissive regarding the attitudes of the children. Father further alleged that the children had exhibited signs of parental alienation. At the time of the Emergency Petition's filing, the minor daughter was thirteen years of age, and the minor son was eleven.

Mother filed a response to the Emergency Petition, denying that she had engaged in parental alienation. Mother averred that Father had "difficulties" with the children as a "direct result of his own lack of warm parenting, his deficient parenting skills, his demands for adoration and love, his lack of discipline, and the general, negative attitude Father has toward Mother."

In the Emergency Petition, Father attached and relied upon certain records of Dr. David McMillan, a clinical psychologist who had conducted sessions with the parties and their minor daughter. On May 16, 2017, Father filed a motion seeking to place Dr. McMillan's psychological report and counseling records under seal and requesting a protective order to prevent disclosure of the records. On May 17, 2017, Mother filed a response to Father's motion to place the records under seal wherein she requested a full copy of Dr. McMillan's records. During a May 18, 2017 show cause hearing concerning the Petition, Dr. McMillan testified, and certain of his records were entered into evidence.[1] Although Mother did not object to the entry of a protective order in her written response, Mother's attorney did object to entry of such an order during the May 18, 2017 hearing. On May 22, 2017, the trial court entered a protective order concerning the records, placing them under seal. Subsequent protective orders were entered by the

---

[1] Dr. McMillan's report and session notes were later stricken from the record by the trial court's order dated July 6, 2018, after the court learned that Dr. McMillan had allowed Father to take notes during Dr. McMillan's sessions with the parties and then relied upon those notes when compiling his report.

trial court to cover additional records from Dr. McMillan and other psychological experts.

On March 2, 2018, Mother filed a motion for relief from the protective orders, stating that she planned to pursue a separate cause of action (with different counsel) against Dr. McMillan for professional negligence. In this motion, Mother requested that the seal respecting the records be partially removed and that she be allowed to share Dr. McMillan's records and testimony with her newly retained counsel in order to prepare for the negligence action. The trial court entered an order on March 27, 2018, granting Mother's request and modifying its previous orders to allow Mother to share Dr. McMillan's records and testimony with her counsel and any expert retained by her counsel. The court further ordered that such documents must be maintained in strict confidence by Mother's counsel and experts.

Concerning the co-parenting issues, on November 8, 2018, the trial court approved an agreed order incorporating a modified permanent parenting plan. Entry of this order triggered a requirement from the protective order entered on May 22, 2017, which provided that the records "supplied to counsel for the parties and any and all copies and/or excerpts shall be returned to the Court within thirty (30) days for destruction by the Court." Subsequently, on December 19, 2018, Mother filed an additional motion for relief from the previously entered protective orders. In this motion, Mother stated that she had retained counsel to represent her and had filed a professional malpractice action against Dr. McMillan. Mother thereby requested that she be allowed to transfer the materials subject to the protective orders to her attorneys in the malpractice action. Mother acknowledged that she would seek an order in the separate action providing that any sensitive information related to the children would be protected by the attorneys and judge.

The trial court conducted a hearing concerning Mother's motion on January 18, 2019, and issued an order denying the motion on February 4, 2019. The trial court ordered that the documents and records must be returned and destroyed, determining that neither Father's nor the minor children's mental health were at issue in Mother's professional malpractice action and that Father had not waived the psychologist-client privilege. The court further noted that because no appeal had been taken from the November 8, 2018 order, such order had become final.

On February 12, 2019, Mother filed a motion to alter or amend, limiting the scope of her request for relief from the protective orders to a narrow set of records. The trial court denied Mother's motion to alter or amend on March 25, 2019, predicating its ruling upon concerns regarding the children's best interest. The trial court ordered that the documents would be preserved pending the outcome of Mother's appeal. Mother timely appealed.

## II.  Issues Presented

Mother presents the following issue for review, which we have restated slightly:

1.     Whether the trial court erred by ordering the return and permanent destruction of documents that Mother had asserted were necessary to her separate professional malpractice action against Father's testifying expert.

Father raises the following additional issue, which we have also restated slightly:

2.     Whether Father is entitled to an award of attorney's fees incurred in defending this appeal.

## III.  Standard of Review

Regarding the standard of review applicable to modification of a protective order that concerns discovery documents, this Court has previously explained:

> Generally, the granting, denying, or modifying of a protective order relating to discovery procedures under Rule 26.03 rests within the sound discretion of the trial court.  *Ballard* [*v. Herzke*], 924 S.W.2d [652,] 659 [(Tenn. 1996)]; *Summers v. Cherokee Children's & Family Servs. Inc.*, 112 S.W.3d 486, 530 (Tenn. Ct. App. 2002).  Accordingly, the decision of a trial judge on a protective order is reviewed on appeal for an abuse of discretion.

*In re NHC-Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008).  Similarly, modification of an order sealing records aside from discovery documents is reviewed pursuant to the same standard.  *See Kocher v. Bearden*, No. W2017-02519-COA-R3-CV, 2018 WL 6423030, at *10 (Tenn. Ct. App. Dec. 5, 2018) ("*Kocher II*").

As our Supreme Court has elucidated concerning the abuse of discretion standard of review:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.  *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000).  It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives.  *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct.

App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

IV.  Orders Concerning Return and Destruction of Documents

The trial court entered several protective orders, providing that various documents authored or relied upon by certain mental health professionals who rendered opinions in this matter, as well as the transcripts of such expert testimony, would be maintained under seal.  As a result, the record contains several volumes of sealed documents.  As previously explained, Mother clarified in her motion seeking to alter or amend the trial court's February 4, 2019 order that she was only seeking a partial removal of the court's seal, such that she could retain and utilize the following narrow set of documents in her malpractice action against Dr. McMillan:

1.      Dr. McMillan's evaluation report and attached notes;

2.      The transcript of Dr. McMillan's testimony from the May 18, 2017 hearing;

3.      The transcript of Dr. McMillan's deposition testimony, as well as the attached exhibits; and[2]

4.      The records Dr. McMillan produced pursuant to Mother's request.

We note that the records Mother seeks to retain and utilize include records that were produced during the discovery process and records that were filed as exhibits during trial or transcripts of trial testimony.  Tennessee courts have developed two different methods of analysis to be applied when determining whether a trial court can properly order that these two categories of documents, those produced during discovery and those produced during trial, remain sealed.  *See Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996); *Kocher v. Bearden*, 546 S.W.3d 78, 86 (Tenn. Ct. App. 2017) ("*Kocher I*").  We will address each category in turn.

A.  Documents Produced During Discovery

Dr. McMillan's deposition transcript, as well as any exhibits thereto, and Dr. McMillan's records produced pursuant to Mother's request constitute documents filed during the discovery process. Tennessee Rule of Civil Procedure 26.03 provides that trial courts may enter protective orders concerning such documents upon "motion by a party or by the person from whom discovery is sought, and for good cause shown "when doing so will protect the party or person from "annoyance, embarrassment, oppression, or undue burden or expense."  In 1996, our Supreme Court rendered the pivotal *Ballard* decision, *see* 924 S.W.2d at 659, wherein the Court adopted a balancing test to be utilized

---

[2] Dr. McMillan's deposition (with attached exhibits) does not appear in the appellate record.

by courts when determining whether to modify an existing protective order governing documents filed as part of the discovery process. As the High Court explained:

> Under Rule 26.03, Tenn. R. Civ .P., upon motion by any party and for good cause shown, a trial court has the authority to make any order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . ." ordering that the discovery responses be filed under seal, as was done in this case. Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings. In addition, protective orders are often used by courts as a device to aid the progression of litigation and to facilitate settlements. Protective orders strike a balance, therefore, between public and private concerns.

> To establish "good cause" under Rule 26(c), the moving party must show that disclosure will result in a clearly defined injury to the party seeking closure. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not amount to a showing of good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Mere conclusory allegations are insufficient. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order is on the party seeking the order. *Id*.; *see also Loveall v. American Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn. 1985).

> In determining whether good cause has been established for a protective order, it is important that trial courts balance one party's need for information against the injury that would allegedly result if disclosure is compelled. Factors in the balance weighing against a finding of good cause include: (1) the party benefitting from the protective order is a public entity or official; (2) the information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency.

> On the other hand, factors in the balance weighing in favor of a finding of good cause include: (1) the litigation involves private litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm. No particular weight is assigned to any factor, and the balancing test allows trial courts to evaluate the competing considerations in light of the facts of each individual case. The ultimate decision as to whether or not a protective order should issue is entrusted to the sound discretion of the trial court and it will not be reversed on appeal, absent a

showing of abuse of discretion. *Loveall*, 694 S.W.2d at 939. The burden of establishing abuse of discretion is on the party seeking to overturn the trial court's ruling on appeal. *See Rachels v. Steele*, 633 S.W.2d 473, 475 (Tenn. Ct. App. 1981). To facilitate effective appellate review, trial courts should articulate on the record findings supporting its decision. In appropriate cases, the trial court may deem it necessary to seal that portion of the record which contains its findings, for in some circumstances, the court's open articulation of its findings would compromise the protective order.

Once entered, protective orders need not remain in place permanently, however, and their terms are not immutable. It is well-settled that a trial court retains the power to modify or lift a protective order that it has entered.

*Ballard*, 924 S.W.2d at 658-59 (other internal citations omitted).

The *Ballard* Court adopted a balancing test for determining whether to modify an existing protective order governing documents filed as part of the discovery process by utilizing the above-described test for determining whether to impose an initial protective order and adding the additional factor of reliance by the original parties on the protective order. *See id*. at 659. The High Court noted that the "parties' reliance is but one factor a court should consider in the balance when determining whether modification of a protective order is appropriate." *Id*. Concerning such reliance, the *Ballard* Court elucidated:

"The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery . . . ." *Beckman Indus., Inc.* [*v. Int'l Ins. Co.*], 966 F.2d [470,] 475-76 [(9th Cir. 1992)] (citation omitted). In that respect, trial courts must consider whether reliance is real and reasonable or is only an effort by litigants to avoid later modification. Although reasonable cooperation is some evidence of reliance, it is not determinative. For example, blanket protective orders, are particularly useful in effecting cooperation and expediting the flow of pretrial discovery; however, they are also, by nature, over inclusive, less likely to induce reasonable reliance, and therefore, peculiarly subject to later modification. Accordingly, reliance on a blanket protective order ordinarily weighs little in the balance against modification. The appropriate procedure, following delivery of documents under a blanket protective order, is to allow the party seeking to maintain confidentiality an opportunity to indicate precisely which documents are allegedly confidential. The party seeking to maintain the seal then has the burden of establishing good cause with respect to those documents.

- 8 -

In sum, once a party moves to modify a protective order, a trial court must balance the factors initially considered when determining good cause, and in addition, consider the reliance of the original parties to the order, to determine whether good cause still exists for the order. As previously explained, if access to protected materials can be granted without causing harm to legitimate privacy interests, access should be granted.

*Id*. at 660 (other internal citations omitted).

In this case, Father initially sought a protective order placing Dr. McMillan's report and notes under seal. In his motion, Father alleged that the report and notes contained specific references to the eldest child's behavior as such information related to Father's allegations of parental alienation. Father further asserted that disclosure of the information would cause "embarrassment to the parties or harm to the minor child." Mother filed a response, claiming that she had not been provided a full and complete copy of Dr. McMillan's records despite the fact that Father appeared to be utilizing Dr. McMillan as an expert witness. The trial court accordingly entered a protective order on May 22, 2017, determining that such records would be placed under seal "inasmuch as they deal with behavioral issues impacting the minor child." The court further determined that the exhibits to Father's emergency custody petition and any additional records provided by Dr. McMillan would likewise be placed under seal. The court's order also provided in pertinent part:

Upon entry of a final Order in this cause, the copy of the Records supplied to counsel for the parties and any and all copies and/or excerpts shall be returned to the Court within thirty (30) days for destruction by the Court. . . .

A willful violation of this Protective Order shall constitute contempt of Court and may result in incarceration and/or other sanctions.

On March 2, 2018, Mother filed a motion for relief from the protective orders, stating that she planned to pursue a separate cause of action against Dr. McMillan for professional negligence. Mother requested that she be able to share Dr. McMillan's records and statements with her new counsel in order to prepare for the negligence action. The trial court entered an order on March 27, 2018, granting Mother's request and modifying its previous orders to allow Mother to do so. Subsequently, on November 8, 2018, the trial court approved an agreed order containing an agreed modified permanent parenting plan. This order settled all of the outstanding custody and co-parenting issues between the parties.

Accordingly, on December 19, 2018, Mother filed her second motion for relief from the previously entered protective orders. In this motion, Mother stated that she had filed a professional malpractice action against Dr. McMillan. Mother sought permission to utilize the documents related to Dr. McMillan in that lawsuit, with the proviso that any sensitive information related to the children would be protected by the attorneys and judge in that action.

In its February 4, 2019 order denying Mother's motion, the trial court directed that the documents and records must be returned and destroyed, determining that neither Father's nor the minor children's mental health were at issue in Mother's professional malpractice action and that Father had not waived the psychologist-client privilege. On February 12, 2019, Mother filed a motion to alter or amend, limiting the scope of her request to a narrow set of records. The trial court also denied Mother's motion to alter or amend by order entered on March 25, 2019, citing concerns regarding the children's best interest.

Concerning the discovery documents in particular, the trial court failed to analyze specifically the factors outlined by the *Ballard* balancing test when rendering its determination concerning whether the protective order should be modified. *See Ballard*, 924 S.W.2d at 658-60. To reiterate, the trial court should have considered the following factors: (1) whether the party benefitting from the protective order is a public entity/official or a private litigant; (2) whether the information sought to be sealed relates to a matter of public concern or a matter of private concern; (3) whether the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency; (4) whether disclosure would result in serious embarrassment or other specific harm; and (5) whether the parties relied on the protective order, as measured by the extent to which the protective order induced the party to allow discovery. *See id*. Because the trial court failed to consider or make findings regarding these factors and therefore applied an incorrect legal standard, we must vacate the trial court's order denying Mother's motion to alter or amend. *See Lee Med., Inc.*, 312 S.W.3d at 524-25.

Despite the trial court's failure to consider or make findings concerning the *Ballard* factors, this Court is easily able to review most of the factors as they apply to the case at bar. For example, it is clear that the parties herein are not public officials and that the sealed information does not relate to a matter of public concern. Rather, the parties are private litigants, and the information involves a matter of private concern. Mother asserts that the information contained in the records she seeks is clearly relevant to other litigation, namely her professional negligence claim against Dr. McMillan, and we agree. Sharing the information would promote fairness and efficiency in that Mother would be able to utilize the records in her related litigation against Dr. McMillan without having to engage in further discovery. Moreover, preventing the destruction of this

information may, in fact, prevent evidence supportive of her malpractice claims from being forever lost.[3]

In regard to the fourth factor, Father has argued that disclosure of the sealed records would result in embarrassment to the parties and potential harm to the eldest child. However, this Court's review of the sealed records has demonstrated that the most egregious information contained therein is repetitive of information contained elsewhere in the record. For example, Father's Emergency Petition, which was never placed under seal, contains more than thirty pages of specific allegations concerning the eldest child's behavior toward Father, including excerpts of transcribed conversations between Father and the child; excerpts from conversations involving the child, the parties, and Dr. McMillan; and copies of text messages and email messages authored by the child. The bulk of the additional information contained in the sealed records would be most embarrassing to Mother, who is the party seeking use of the sealed information. As such, Father failed to show that disclosure of the sealed documents would result in any actual harm.

With regard to the final factor, however, this Court cannot determine the extent to which the parties relied upon the protective orders when disclosing the sealed documents, as measured by whether the existence of the protective orders induced Father to allow discovery, because the trial court did not indicate that it had analyzed this factor. Dr. McMillan's discovery deposition was, according to the parties, taken on December 21, 2017, once protective orders were already in place. Neither the transcript of this deposition nor the exhibits attached thereto are contained within the appellate record. Dr. McMillan's additional records were also disclosed on July 7, 2017, after protective orders were in place. As such, without further information concerning Father's reliance on the existence of the protective orders when allowing the disclosure of this information, this Court cannot determine whether such reliance would prohibit modification of the protective orders. This is a factual issue that must be determined by the trial court in the first instance. *See Ballard*, 924 S.W.2d at 661 ("[T]he trial court is in the best position to weigh fairly the competing needs and interests of the parties."). We therefore remand this issue to the trial court for further hearing, as necessary, and determination based upon the appropriate factors.

---

[3] During the January 18, 2019 hearing concerning Mother's motion to modify the protective orders, the trial court judge commented that the information sought could likely be obtained through other means. However, the trial court's protective orders required the return and destruction of the original documents as well as "any and all copies and/or excerpts." As such, the only way that the information could be found elsewhere would be if a party disobeyed the trial court's order. Furthermore, although Father questions the existence of Mother's lawsuit against Dr. McMillan in his appellate brief, we note that Mother filed copies of her complaint and a proposed protective order that was sought in that separate action. Neither the trial court nor the parties questioned the existence of the separate lawsuit at the trial court level.

## B. Trial Transcripts and Exhibits

Concerning the transcript of Dr. McMillan's May 18, 2017 trial testimony and the exhibits entered during that hearing, which included Dr. McMillan's report and attached notes, such information was placed under seal by two protective orders entered on June 8, 2017. Because these sealed documents do not constitute discovery documents, they were not sealed pursuant to the authority of Tennessee Rule of Civil Procedure 26.03. *See Kocher I*, 546 S.W.3d at 85 n.9. Rather, the "the trial court exercised its inherent authority to seal its record" and, as such, we "do not deem it appropriate to apply *Ballard*'s Rule 26.03 analysis to the protective order before us." *See id.*

In *Kocher I*, this Court was asked to determine whether the trial court should have modified its prior order sealing the record of a settlement agreement between the plaintiff and the defendant when an intervening party sought to utilize those records to defend itself in a separate lawsuit filed by the same plaintiff. *See* 546 S.W.3d at 80. Concerning the trial court's authority to seal its records, this Court elucidated:

> "'[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.'" *In re NHC-Nashville Fire Litig.*, 293 S.W.3d at 560 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)). "For more than a century, Tennessee courts have recognized the public's right to inspect governmental records." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016) (citing *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948, 959 (1903)). In Tennessee, "[t]here is a presumption of openness for governmental records." *Id.* The Tennessee Constitution expressly provides that "all courts shall be open." Tenn. Const. Art. I, § 17.8. "The rule that judicial proceedings, including judicial records, are presumptively open is well established in the Constitution of Tennessee and case law." *Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at *6 (Tenn. Ct. App. Dec. 21, 2012); *see, e.g., In re NHC-Nashville Fire Litig.*, 293 S.W.3d at 571 (explaining that the permissive intervenor had "a presumptive right of access to documents filed in court"). "[T]he Tennessee Supreme Court has recognized a qualified right of the public, founded in common law and the First Amendment to the United States Constitution, to attend judicial proceedings and to examine the documents generated in those proceedings." [*Knoxville New-Sentinel v.*] *Huskey*, 982 S.W.2d [359,] 362 [(Tenn. Crim App. 1998)].

> Still, the right of access is not absolute, and "[c]ourts have inherent power to seal their records when privacy interests outweigh the public's right to know." *Id.* at 362 n.1. Every court has "inherent supervisory

authority" over its own records and files. *In re Lineweaver*, 343 S.W.3d 401, 413 (Tenn. Ct. App. 2010); *In re NHC-Nashville Fire Litig.*, 293 S.W.3d at 561. Access may be denied where court files might become vehicles for improper purposes, such as promoting public scandal or publication of libelous statements. *In re NHC-Nashville Fire Litig.*, 293 S.W.3d at 561.

Protective orders strike a balance between these public and private concerns. *Ballard*, 924 S.W.2d at 658. "Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Id.* Any restriction on public access to judicial proceedings and documents "must be narrowly tailored to accommodate the competing interest without unduly impeding the flow of information." *Huskey*, 982 S.W.2d at 363.

> "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

*In re NHC-Nashville Fire Litig.*, 293 S.W.3d at 560 (quoting *State v. Drake*, 701 S.W.2d 604, 607-08 (Tenn. 1985)). "*Ballard* is but the last in a line of Tennessee cases recognizing the public's right to intervene and examine judicial proceedings when the public's right to know can be balanced against the right of litigants to a fair adjudication of the substantive civil or criminal proceeding." *Huskey*, 982 S.W.2d at 362.

In sum, the reason for sealing judicial records must be "compelling." *Baugh*, 2012 WL 6697384, at *7 (quoting *In re NHC*, 293 S.W.3d at 567). This Court has "caution[ed] trial courts not to seal records simply because a party requests this be done." *Warwick v. Jenkins, Habenicht & Woods, PLLC*, No. E2012-00514-COA-R3-CV, 2013 WL 1788532, at *1 n.1 (Tenn. Ct. App. Apr. 25, 2013). "In order to maintain public confidence in our judicial system it is important that litigation remain open and accessible to the public absent a valid reason for keeping information from the public eye." *Id.*

*Kocher I*, 546 S.W.3d 78, 85-86 (footnote omitted). *See Kocher II*, 2018 WL 6423030, at *13 (determining that the trial court erred by denying a motion to modify its previously entered protective order when the trial court failed to articulate any compelling interest

that would justify sealing the records); *Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at \*6 (Tenn. Ct. App. Dec. 21, 2012) (determining that the trial court abused its discretion by ordering settlement documents sealed without a finding that the reason for sealing the documents was compelling).

In the case at bar, the trial court likewise articulated no compelling reason to deny Mother's motion seeking modification of the court's prior protective orders. Although the trial court made several statements concerning the "best interests of the parties' minor children" and avoiding harm and embarrassment, we note that other portions of the unsealed record contain much of the same information that might be embarrassing to the eldest child. Any concerns about protecting the child from embarrassment due to disclosure of the sealed records can be remedied by entry of a protective order restricting disclosure of the records in the separate malpractice litigation. *See*, *e.g., Kocher II*, 2018 WL 6423030, at \*10.

The trial court also predicated its denial of Mother's motion on the psychologist-patient privilege. *See* Tenn. Code Ann. § 63-11-213 (2017) ("For the purpose of this chapter, the confidential relations and communications between licensed psychologist or psychological examiner or senior psychological examiner or certified psychological assistant and client are placed upon the same basis as those provided by law between attorney and client[.]"); *Culbertson v. Culbertson*, 455 S.W.3d 107, 115 (Tenn. Ct. App. 2014) (likening the psychologist-patient privilege to the attorney-client privilege). The psychologist-patient privilege is not absolute and may be waived by the patient. *See Culbertson*, 455 S.W.3d at 132. The privilege is designed to protect confidences that the patient has shared with a treating psychologist, and if the patient "divulges the communications he seeks to protect, then he has waived" the privilege. *See id.* Moreover, the psychologist-patient privilege "'is not designed to specifically protect [a] psychotherapist's own opinion, observations, diagnosis, or treatment alternatives, particularly when such information finds its way beyond [a] patient's personal file.'" *Id.* at 137 (quoting B.W. BEST, 44 A.L.R. 3d at § 4(e) (supp.)).

In the case at bar, the sealed records do not contain confidential disclosures made by Father to Dr. McMillan during the course of Father's individual treatment. Instead, the sealed records at issue consist of Dr. McMillan's trial testimony, his report concerning the parties and the eldest child, and his attached session notes detailing only group sessions and one private session with Mother. Therefore, the psychologist-patient privilege does not apply and cannot provide a compelling reason for maintaining the sealing and destruction of these records.

Inasmuch as the trial court has failed to articulate a compelling reason to maintain the seal on or order the destruction of the transcript of Dr. McMillan's May 18, 2017 trial testimony and the exhibits entered during that hearing, including Dr. McMillan's report and attached notes, we reverse the trial court's denial of Mother's motion to modify its

- 14 -

protective orders concerning these specific records. We do, however, require that Mother seek entry of a protective order restricting disclosure of the records in the separate malpractice litigation in order to prevent any potential embarrassment to the eldest child. *See, e.g., Kocher II*, 2018 WL 6423030, at \*10.

## V. Attorney's Fees on Appeal

Father has requested an award of attorney's fees incurred in defending this appeal, which he characterizes as frivolous. As this Court has previously explained regarding frivolous appeals:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.
>
> A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003). Similarly, Tennessee Code Annotated § 27-1-122 (2017) provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Exercising our discretion, we determine that this appeal was not frivolous or taken solely for delay. We therefore decline to award attorney's fees to Father as damages in this matter.

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's order denying Mother's motion to alter or amend as it pertains to the documents produced during discovery. We remand this issue to the trial court for further hearing, as necessary, and determination of this issue based upon the appropriate factors. *See Ballard*, 924 S.W.2d at 658-60. Moreover, we reverse the trial court's order denying Mother's motion to alter or amend as it pertains to the trial transcript and exhibits. We deny Father's request for an award of

- 15 -

attorney's fees on appeal.  This matter is remanded to the trial court for further proceedings consistent with this opinion.  Costs on appeal are taxed to the appellee, Christian Todd Bottorff.


_____
THOMAS R. FRIERSON, II, JUDGE